PEOPLE v. BUTLER.

1. JUDGES—EXAMINING MAGISTRATE — DISQUALIFICATION OF JUDGE —RECORDER'S COURT OF DETROIT—PREJUDICE.
    Although the practice, in the recorder's court of the city of Detroit, of assigning, on the advice of the prosecuting attorney, the trial of a case before the same judge who acted as the examining magistrate, is not to be commended, yet, in the absence of claim of bias or prejudice on the part of the judge, he cannot be held to be disqualified.

2. APPEAL AND ERROR—QUESTION NOT PRESENTED BY RECORD.
    Where the record does not contain the testimony taken on the examination, the Supreme Court is unable to consider the question as to whether the evidence before the examining magistrate warranted his finding of probable cause that defendants were guilty of the offense charged.

3. CRIMINAL LAW—EVIDENCE—WITNESSES—GRAND JURY STENOGRAPHER COMPETENT TO TESTIFY—STATUTES.
    In a criminal prosecution, the stenographer who took the

On admissibility in criminal case of statements made by accused before grand jury, see note 9 L. R. A. (N. S.) 533.
On combination among produce buyers as monopoly, see notes in 5 L. R. A. (N. S.) 136.

testimony of a witness before the grand jury is competent, under section 2 of Act No. 196, Pub. Acts 1917, to testify as to whether the testimony of such witness given upon the trial was consistent with his testimony given before the grand jury.

4. SAME — CROSS-EXAMINATION — WITNESSES — TESTIMONY BEFORE GRAND JURY.

The trial court was not in error in permitting the prosecutor to cross-examine the defendants as to that part of their testimony before the grand jury claimed to be inconsistent with their testimony given on the trial.

5. SAME—EVIDENCE—ADMISSIBILITY.

Where the trial court carefully confined the testimony of defendants to the use and purpose permitted by the statute, its admission did not open the way for defendants' counsel to examine the witnesses as to other proceedings before the grand jury, nor did it justify his demand for a transcript of all the testimony.

6. SAME—TESTIMONY BEFORE GRAND JURY—STATUTES.

Since no part of the testimony other than that permitted to be used by the statute was admissible, counsel may not complain that he was not permitted to use the entire transcript or that he was not allowed to examine the witnesses on matters not authorized by the statute.

7. WITNESSES—CONSTITUTIONAL RIGHTS—WAIVER.

Where defendants took the stand voluntarily, without claiming their constitutional rights, an objection that they were not informed as to what their constitutional rights were is without merit.

8. CRIMINAL LAW—CONSPIRACY IN RESTRAINT OF TRADE—EVIDENCE —SUFFICIENCY.

In a prosecution charging a conspiracy in restraint of trade in violation of 3 Comp. Laws 1915, § 15095, evidence *held*, sufficient to take the case to the jury.

9. TRIAL—INSTRUCTIONS—APPEAL AND ERROR.

Objections to the charge of the court, on the ground that there was no evidence to justify the instructions given, *held*, not sustained by the record.

Exceptions before judgment from recorder's court of Detroit; Marsh (Pliny W.), J. Submitted October

13, 1922. (Docket No. 182.) Decided March 22, 1923.

William G. Butler and others were convicted of a conspiracy in restraint of trade. Affirmed.

*Payne & Payne,* for appellants.

*Merlin Wiley,* Attorney General, *Paul W. Voorhies,* Prosecuting Attorney, and *Edwin S. Bartlett,* Assistant Prosecuting Attorney, for the people.

McDONALD, J.   Four of the defendants, William G. Butler, Isadore Warren, Artie Purse, and Willett S. Jull, were convicted in the recorder's court in the city of Detroit, under an information charging them with having conspired with each other and others to enter into a contract in restraint of trade.   Of the other defendants some were discharged by the court at the close of the people's case, and the others were acquitted by the jury.   The information contains three counts, *first,* that they conspired to enter into such a contract, *second,* that they did enter into such a contract, and *third,* that they solicited and coerced other persons to enter into the contract.   They were found guilty on the first count and acquitted on the other two counts.

The defendants are wholesale dealers in produce in the city of Detroit.   The distribution of produce in that city is carried on through three agencies, car lot receivers, wholesalers, and retailers.   Some of the car lot receivers sold produce direct to the retailers, and it is the theory of the people that the wholesalers, desiring to prevent the car lot receivers from selling direct to the retailers and to restrict that trade to themselves, conspired to procure a contract to that effect from the car lot receivers, and that to further this object they organized the Wholesale Dealers Produce Association.

It is the claim of the defendants that the object of their association was lawful and was intended to improve the relations between it and the car lot dealers, and to prevent congestion on the street at the point where this business was carried on. At the conclusion of the people's case, counsel for the defendants made a motion to discharge the defendants for the reason that the people had not made out a case of conspiracy, that there had been no evidence of any agreement to restrict free competition in handling produce in the city of Detroit, and that there was no evidence of any combination or conspiracy to regulate the distribution of produce. This motion was denied and the case submitted to the jury as to all of the defendants except David Bloomgarden, James N. Purse and Carl Siegel. The four defendants who were convicted have brought their case to this court for review on exceptions before sentence.

The assignments of error present the following questions:

1. That Judge Marsh was disqualified to conduct the trial because he was the examining magistrate on the examination in the lower court and because the case was assigned to him by the presiding judge of the recorder's court on the advice of the prosecuting attorney. The practice followed by the presiding judge in this case is not to be commended. In the city of Detroit the recorder's court is composed of several judges and there is no occasion to assign the trial of a case to the judge who acted as the examining magistrate.

"The law aims, as far as possible, to give every man a trial that shall not only be fair, but as free as may be from any suspicion of partiality or undue influence." *Bashford* v. *People*, 24 Mich. 244.

The selection on the advice of the prosecuting attorney of a judge who had already been connected

with the case as examining magistrate was sufficient to create in the minds of the defendants a "suspicion of partiality or undue influence." In the administration of the criminal law it is never proper to permit the prosecuting attorney to have any part in the selection of a judge to try his accusations. However, as there is no claim of bias or prejudice on the part of Judge Marsh, he cannot be held to be disqualified. See *People* v. *Ferrise,* 219 Mich. 471.

2. The second question relates to the denial of a motion to quash the information for the reason that there was no evidence warranting the examining magistrate in finding probable cause that the defendants were guilty of the offense charged in the complaint and warrant. We are unable to consider this question because the record does not contain the testimony taken on the examination.

3. Use of the grand jury testimony. Various assignments are presented relating to the rulings of the trial judge in allowing the prosecuting attorney to cross-examine some of the defendants as to their testimony before the grand jury held by the justice of the peace, and in allowing the witness Baker, the stenographer who took their testimony, to testify as a witness for the people to testimony given before the grand jury. The statute permits members of the grand jury to testify whether the testimony of a witness examined before such jury is consistent with or different from the evidence given by the witness on the trial. It is the claim of counsel that the only member of the grand jury was the justice of the peace, and that he is the only person who could testify as to the inconsistency of the testimony of these witnesses. Section 2 of Act No. 196, Public Acts 1917 (Comp. Laws Supp. 1922, § 15664 [2]), in part provides that

"in respect of communicating or divulging any state-

ment made by such witnesses during the course of such inquiry, the justice, judge, prosecuting attorney, and other person or persons who may, at the discretion of such justice, be admitted to such inquiry, shall be governed by the provisions of law relative to grand jurors."

We think that this provision of the statute is sufficient authority for the admission of the testimony of the stenographer. The court was not in error in receiving this testimony, nor was he in error in permitting the prosecuting attorney to cross-examine the defendants as to that part of their testimony before the grand jury which he claimed was inconsistent with their testimony given on the trial. The court carefully confined this testimony to the use and purpose permitted by the statute. This did not open the way for counsel for the defendants to examine the witnesses as to other proceedings before the grand jury, neither did it justify his demand that the transcript of all of the testimony be delivered to him.

"Where the statutes prescribe the cases in which a grand juror may testify, it is held that he may do so in no other." 9 Am. & Eng. Enc. Law (1st Ed.), p. 17.

No other part of the testimony than that permitted to be used by the statute was admissible, and therefore counsel cannot justly complain that he was not permitted to use the entire transcript or that he was not allowed to examine the witnesses on matters not authorized by the statute.

As a further objection to the testimony counsel say it does not appear that the witnesses were informed as to their constitutional rights when they were sworn before the grand jury. It is not contended that any of these witnesses claimed his privilege and that it was denied him, nor is it claimed that their testimony was not voluntarily given. The sole question is that they were not informed as to their constitutional

rights.   This was not necessary.   The question is ruled by *People* v. *Lauder*, 82 Mich. 109.

4. There are a great many other assignments of error relating to the introduction and exclusion of testimony.   They present no new question, therefore we will not specifically mention them nor discuss them in detail.   For the most part they are without merit. In some instances testimony was received which should have been excluded, and testimony was excluded which should have been received, but in no instance was there any testimony wrongfully admitted or excluded which tended in any way to prejudicially affect the defendants' interests.

5. It is next urged by counsel that the court erred in refusing to grant defendants' motion to direct a verdict of not guilty.   Touching this question in their brief counsel say:

"The undisputed testimony of this record reveals the fact that the respondents were not guilty of the crime of conspiracy as alleged in the three counts of the information.   In view of the fact that the four respondents and appellants were found guilty on the first count, there is only that feature to be considered. Does the record reveal any testimony that the four respondents were guilty as alleged in the first count of the information?   The record is barren of any testimony that, we believe, warranted the court in submitting the case to the jury."

The information is laid under section 15095, 3 Comp. Laws 1915, which provides in part that any

"contract, agreement, understanding and combination shall constitute a criminal conspiracy, * * * the purpose or object or intent of which shall be to limit, control, or in any manner to restrict or regulate the amount of production or the quantity of any article or commodity to be raised, or produced by mining, manufacture, agriculture or any other branch of business or labor, or to enhance, control or regulate the market price thereof, or in any manner to prevent or restrict

free competition in the production or sale of any such article or commodity." * * *

The first count of the information charged that the defendants conspired to enter into such a contract with the car lot receivers. Of this charge they were convicted. It is not claimed that the defendants sought to control the quantity of the sales. The sole claim of the people is that they conspired to secure an agreement which would bind the car lot receivers to sell only to the members of the Wholesale Produce Dealers Association and which would eliminate sales to retailers. Such an agreement is forbidden by the statute and if made would constitute a criminal conspiracy. It was an agreement to prevent and restrict free competition in the sale of produce in the city of Detroit. The car lot receivers were organized and their organization was known as the Detroit Produce Association. The testimony of the people tends to show that to procure an agreement with the Detroit Produce Association, the Wholesale Produce Dealers Association appointed a committee to meet with a committee of the other organization and that in these negotiations the four defendants were active participants. Mr. Kyte, secretary of the Detroit Produce Association, was a witness for the people. He testified that there was

"no attempt to limit sales on quantity basis. There was no agreement reached on any basis, or any agreement otherwise suggested on any basis except the limitation of sales to a class during the negotiations at which any of the defendants were present. The agreement was in respect to sales to a given class or group of individuals without regard to quantity."

As secretary of the Detroit Produce Association Mr. Kyte addressed a communication to the Wholesale Produce Dealers Association asking for more definite information in regard to certain provisions of the pro-

posed agreement. The secretary of the Wholesale Produce Dealers Association made written reply (Ex. 7) in which he gave their understanding of the agreement to be that the car lot receivers "agree not to sell to retailers on track, binding themselves to sell to wholesalers only."

Mr. Kyte further testified that on May 19th there was a temporary verbal agreement entered into in which it was provided that with certain exceptions the car lot receivers would not sell to any retailers for a period of thirty days. He also gave testimony of a boycott against the car lot receivers by the wholesalers, that this was discussed and the suggestion made that if the car lot receivers would refuse to sell to garage markets conditions would go back to normal.

Mr. Read, a car lot receiver, testified that he attended one of the joint committee meetings at which the four defendants were present, and that at this meeting they discussed an agreement not to sell to the retail trade. The wholesalers employed an attorney to put in form an agreement containing such a provision. The agreement was reduced to writing (Exhibits 4, 5), but was not signed by any one. So far as the charge in the first count of the information is concerned, it is immaterial that none of the defendants signed it. If they combined to secure such an agreement they were guilty of a conspiracy to interfere with and restrict free competition in the sale of produce, an act made unlawful by the statute. We think that there was evidence tending to establish every element of the offense charged in the first count of the information, and that the court did not err in refusing to grant defendants' motion to direct a verdict of not guilty.

6. Counsel for defendants discuss two objections to the charge of the court to the jury. Both are based on the claim that there was no evidence to justify the

instructions given. In consideration of the preceding question we have pointed out some of the evidence which answers the objection presented by this assignment.

After a careful examination of this somewhat voluminous record and the large number of assignments presented by counsel, we are convinced that there is no reversible error.

The conviction is sustained. The trial court will proceed to judgment.

WIEST, C. J., and FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.