## PEOPLE v. SIMMS.

1. Conspiracy—Violation of Gaming Law—Evidence.

> On appeal of two of eight defendants convicted of conspiracy to violate the gaming laws in prosecution in which 11 defendants were arrested and 10 tried together, where conspiracy was established, officers had had under observation two apartments used as headquarters of the "numbers business" and occupied by sister of one appellant and brother of the other, who were also codefendants and from which places each appellant had been seen entering or leaving with tickets used in the business, evidence was sufficient to submit to jury the question of appellants' implication in the conspiracy.

2. Gaming—Property.

> No property rights are recognized in gambling devices and articles used for gambling.

3. Evidence—Gambling Paraphernalia—Searches and Seizures.

> Where search and seizure of premises used as headquarters for operation of a "numbers business" was lawful, in that search warrants were based on affidavits charging that places to be searched were being used for gambling, a misdemeanor, the gambling paraphernalia then seized was thereafter admissible in evidence in any criminal case in which it could reasonably be considered material to, or substantive proof of, the offense charged in such case.

4. Conspiracy—Merger with Specific Offense that is Object of Conspiracy.

> An indictment for conspiracy will lie, notwithstanding a concert and plurality of agents is necessary to consummate the

References for Points in Headnotes

[2] Constitutionality of statutes providing for destruction of gambling devices. 81 A.L.R. 730.
[4] 11 Am. Jur., Conspiracy, § 13.
[4] Criminal responsibility of one co-operating in offense which he is incapable of committing personally. 131 A.L.R. 1322.

offenses charged as the object thereof, where the conspiracy is not merged with the specific offense.

5. WITNESSES—OVERAWING BY COURT—CONSPIRACY.

   In prosecution of two appellants and others for conspiracy to violate the gaming laws, wherein two coconspirators, not defendants, were sworn as people's witnesses, gave testimony in conflict with former testimony given at preliminary examination, were found in contempt in absence of jury and other witnesses but right of cross-examination was thereafter accorded defendants, while action of the court may have been inadvisable it did not result in reversible error, where it did not overawe either the witnesses involved or other witnesses thereafter called.

Appeal from Recorder's Court for the City of Detroit; Maher (John J.), J. Submitted June 17, 1948. (Docket No. 64, Calendar No. 43,099.) Decided October 4, 1948. Rehearing denied November 12, 1948.

William Simms and Isadore Kirschner were convicted of conspiracy to violate the gaming law. Affirmed.

*Edward N. Barnard,* for appellants.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *James N. McNally,* Prosecuting Attorney, and *Robert Newton Smiley* and *Herbert Burdick,* Assistants Prosecuting Attorney, for the people.

DETHMERS, J. Eleven defendants were arrested, ten tried together, and eight convicted of conspiracy to violate the gaming law. Two, William Simms and Isadore Kirschner, appeal.

Charged as error is the trial court's refusal to direct a verdict of not guilty as to the two on the ground that there was no evidence implicating them in any conspiracy. The proofs showed that the

home of Simms' brother, a codefendant, located on Fullerton in Detroit and an apartment on Richton, occupied by Kirschner's sister, also a codefendant, and at one time by him, still being listed under his name on the apartment building directory, were the two headquarters for the operation of the so-called "numbers business" or "mutuel business." A raid on the two places produced considerable gambling paraphernalia, including a large number of mutuel betting tickets. Officers had the places and persons involved in this case under observation for a week or more. They saw a number of the defendants entering or leaving the two places where the headquarters were located on several different occasions frequently carrying brown paper bags. Many of the defendants were seen also on divers occasions at other places carrying such paper bags. Some of the defendants were seen handing over such bags to other defendants at certain locations in the city. When arrested several of the defendants had such brown paper bags in their possession, all of which contained mutuel betting tickets. A few of the defendants were arrested in one or the other of the two headquarters. Some of the persons involved in the conspiracy admitted their part in the "numbers business." The existence of the conspiracy to violate the gaming law was established, at least as to other defendants and participants therein, by competent evidence.

Defendant William Simms was seen on several occasions "with mutuel tickets on him." He was seen coming out of the Fullerton headquarters on two successive evenings, on the latter carrying a paper bag of the kind that were used for carrying mutuel betting tickets. The following evening he was seen in the Richton apartment building. On other occasions his car was seen parked in the vicinity of one or the other of the two headquarters. A

witness who admitted his own connection with the "business" testified that by arrangement he met William Simms in the home of another of the alleged conspirators for the purpose of discussing the "mutuel business" and that they then and there agreed upon the commission to be paid witness in that connection; that he also visited Simms at the latter's apartment to ask for a $300 loan, which Simms instructed him to take out of the next day's "take" in the "mutuel business;" that on one occasion one of his "customers" held a so-called "over-look," that is, a mutuel betting ticket bearing the lucky number, but which, through inadvertence, had not been paid off, and that he used a telephone number given him by Simms to call Simms' apartment and talked with someone there who was supposed to be Simms, who instructed him to pay off the "over-look" ticket out of that day's "take." Simms was arrested in the Richton street apartment building, at which time he denied he was William Simms and claimed to be "Mike" someone; he was carrying $350 in his left side pocket and $635 in his right pocket.

Aside from the above noted connection between Kirschner and the Richton apartment, the proofs showed that he was seen removing one of the familiar paper bags from a parked automobile and handing it to one of the codefendants, then seated in another car; that he thereupon got into the second car and a few minutes later received from another codefendant, who had just driven up in a third car, another one of the brown paper bags. At other times he was seen entering one or the other of the two headquarters and other places also carrying such brown paper bags and delivering them to others of the defendants. When arrested Kirschner had such a bag, which, upon examination, was found to contain 757 current date mutuel betting tickets. He was also carrying an envelope containing money

and mutuel tickets and bearing thereon a written notation concerning the above mentioned "overlook" ticket as to the payment of which Simms had given instructions as above noted. After his arrest Kirschner gave a statement disclosing further details of his connection with and participation in the "business."

On the basis of such proofs a case was made against these two defendants sufficient to go to a jury, and the motion for directed verdict properly denied.

The next claim of error relates to the admission into evidence of things seized under authority of search warrants. It is the defendants' contention that gambling paraphernalia seized under search warrants based on affidavits charging that the places to be searched were being used for gambling may be used in evidence only to prove the commission of that misdemeanor, but not to prove the commission of a felony such as a conspiracy to violate the gaming laws. Cited in support thereof are *Hibbard* v. *People,* 4 Mich. 125, and *Rassner* v. *Federal Collateral Society, Inc.,* 299 Mich. 206. These cases held unconstitutional statutes which were susceptible of use by the authorities for depriving persons of property without due process of law. They have no application to the seizure, as here, of gambling devices and articles used for gambling in which the law recognizes no property rights. *Henry* v. *Kuney,* 280 Mich. 188. Furthermore, the cases did not turn on the question of the admissibility into evidence of articles lawfully seized. Neither is there support for defendants' contention in *Newberry* v. *Carpenter,* 197 Mich. 567 (31 L.R.A. 163, 61 Am. St. Rep. 346), or other cases cited in this connection. In *People* v. *Alicki,* 321 Mich. 701, officers entered a club building for the purpose of arresting a man for whom they held a warrant charging the il-

legal sale of liquor. While in the club they saw gambling devices, which they seized. We held that the seized articles could be used as evidence against the club officers on a charge subsequently made of keeping gambling apparatus. In the instant case the search and seizure under authority of search warrants were legal. The seized gambling paraphernalia came into the officers' possession lawfully and was thereafter admissible in evidence in any criminal case in which it could reasonably be considered material to, or substantive proof of, the offense charged in such case.

Third, defendants urge that an indictment for conspiracy will not lie when "a concert and plurality of agents is necessary to consummate the offenses charged as the objects of the alleged conspiracies." Cited are many decisions from other jurisdictions. The basis for the position announced in those cases, as stated by defendants, is that if two persons "agree to commit adultery, or to fight a duel, or to commit incest or bigamy, such conspiracy is not indictable, assuming that the object of the agreement is consummated, because the agreement to do the unlawful thing and the actual doing of it are so closely related as to be an identity—they are merged." But, in the instant case, where the proofs show a conspiracy existing between a number of persons to operate a "number business" or "mutuel business," their agreement or conspiracy cannot be said to have merged with some specific violation of the gaming law when a bet is placed by some "customer" with one of the conspirators, the conspiracy having been much broader in scope, involving not merely the individual giver and taker of a bet and the transaction between them, but a group of persons conspiring to engage in the business of taking such bets. Defendants' contentions in this respect were disposed of by

*People* v. *Ormsby,* 310 Mich. 291; *People* v. *DeLano,* 318 Mich. 557.

Finally, defendants complain that the trial court erred "in dealing with the assumed perjury or contempt of * * * two witnesses, * * * resulting in overawing witnesses and depriving defendants of their right of cross-examination." Two of the alleged coconspirators, not defendants, were sworn as people's witnesses at the trial. It appears that their testimony conflicted with their former testimony given at the preliminary examination. One of the two testified concerning his own part in the conspiracy, but refused to identify any of the defendants as being persons connected therewith. The other witness refused to give any incriminating testimony concerning the conspiracy or any of the defendants. She testified that her contrary testimony at the examination had been false. The court, in the absence of the jury and other witnesses, held both in contempt and imposed sentences therefor. As to one, this occurred before opportunity of cross-examination was afforded the defense. Thereafter such opportunity was offered, but declined. Defendants claim that their rights were prejudiced in that the court's action (1) tended to overawe other witnesses and (2) overawed the two witnesses in question, thus rendering worthless cross-examination of them by the defense. Cited are cases holding it error to refuse to permit cross-examination as to material matters or to deny witnesses the privilege of explaining discrepancies in former statements. The cases are not in point inasmuch as defendants were not denied the right to cross-examine the two witnesses. The record does not bear out the claim that the two were so overawed as to make cross-examination of them worthless. Neither witness changed his testimony after being held in contempt; each declined the invitation of the court to purge himself.

Neither gave further testimony. As for the over-awing of other witnesses, aside from officers, only two were thereafter sworn, one a bank teller who identified a certain check, and the other testified merely that he had engaged in the "numbers business" with a man called "The Greek," but declined to identify as that person one of the two witnesses held in contempt, who also was known as "The Greek." It is, therefore, clear from the record that no witness sworn was overawed. No showing is made that any of the defendants or other persons would have testified for the defense had it not been for the court's action in holding these two people's witnesses in contempt, or that any had previously testified at the examination or given statements to the authorities which could have placed them in peril of either impeachment or citation for contempt. While we think the action of the court in this connection during the course of the trial was highly inadvisable, it nowhere appears in this case that the rights of the defendants were thereby prejudiced.

Convictions and sentences of defendants William Simms and Isadore Kirschner are affirmed.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, BUTZEL, and CARR, JJ., concurred.