PEOPLE v. PICKETT.

1. Jury—List of Jurors—Home-Rule City—Assessor—Commissioners.
Selection of jurors for service in circuit court by city assessor of home-rule city having a 9-man commission form of government, which 9 commissioners are selected from the 9 wards of the city but who do not have assessing powers, and did not aid in preparation of the jury list, *held*, in substantial conformity to State statute providing for selection of jurors (CL 1948, § 117.1 *et seq.*; § 602.120; Flint City Charter, § 29; Flint Ordinance No 44, § 6.300).

2. Criminal Law—Confrontation With Witnesses.
One accused of crime has a right to be confronted with the witnesses against him (Const 1908, art 2, § 19; CL 1948, § 763.1).

3. Same—Witnesses—Admission of Prior Testimony—Cross-Examination—Availability.
Witness who was called by the people in criminal case and testified up to the point of refusal on ground of self-incrimination notwithstanding trial court's ruling that a previous grant of immunity by one-man grand juror adequately protected him was "unavailable", hence it was proper to admit into evidence prior testimony of such witness taken at the preliminary examination where the right of cross-examination was exercised (CL 1948, § 768.26).

4. Witnesses—Availability—Use of Prior Testimony.
"Available," as the term is used relative to admission of prior testimony of a witness, means "having sufficient force or efficacy for the object," the attainment of justice through the admission of the witness' former testimony (CL 1948, § 768.26).

---

References for Points in Headnotes
[2, 5]  14 Am Jur, Criminal Law § 176 *et seq.*
[3, 4, 6–9]  20 Am Jur, Evidence § 686 *et seq.*
[10]  14 Am Jur, Criminal Law § 14 *et seq.*

5. CRIMINAL LAW—CONSTITUTIONAL LAW—CONFRONTATION WITH WITNESSES.

The constitutional rights of an accused are not abridged, where the accused at any stage of the proceedings, upon the same accusation, has once been confronted by the witness against him, with an opportunity to cross-examine that witness (Const 1908, art 2, § 19; CL 1948, §§ 763.1, 768.26).

6. SAME—FOUNDATION FOR INTRODUCTION OF PRIOR TESTIMONY OF RECALCITRANT WITNESS.

Foundation for introduction of testimony of witness, taken at preliminary examination of one accused of conspiracy to violate gambling laws *held*, sufficient, where witness declined to testify on ground of self-incrimination notwithstanding trial judge's statement in absence of jury that a previous grant of immunity adequately protected him and defendants were offered an opportunity to raise further objection to dialogue-type presentation of prior question-and-answer testimony to jury but declined to object thereto (CL 1948, § 768.26).

7. SAME—DIALOGUE PRESENTATION OF QUESTION-AND-ANSWER TESTIMONY—WAIVER OF ERROR.

Error, if any, in presenting prior question-and-answer testimony of witness who refused to testify at trial on ground of self-incrimination, was waived, where presentation by prosecution staff in dialogue form was not objected to by the defendants (CL 1948, § 768.26).

8. WITNESSES — RECALCITRANT WITNESS — PRIOR TESTIMONY — INSTRUCTION.

Trial court's unbiased and nonprejudicial charge to jury with respect to prior testimony of witness who declined to testify at trial on the ground of self-incrimination *held*, not to have constituted reversible error but to have been a succinct explanation clarifying the effect of the testimony of such witness (CL 1948, § 768.26).

9. CONSPIRACY—INADVERTENT TESTIMONY—INSTRUCTIONS—CURING ERROR.

Error, if any, in testimony of witness which inadvertently crept into record through no fault of counsel and which is claimed to have prejudiced defendants by leading jury to believe that a State-wide gambling conspiracy existed *held*, not to have made a mistrial mandatory but to have been cured by charge to jury that conspiracy claimed by prosecution had no ties or connections beyond the county.

10. CRIMINAL LAW—STATUTES—COMMON-LAW OFFENSES—DUE PROCESS—DELEGATION OF LEGISLATIVE POWER.

Statute imposing a penalty for commission of any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of the State *held*, not so vague, indefinite or uncertain as to constitute a denial of due process or an unlawful delegation of legislative power to the courts (US Const, Am 14; Mich Const 1908, art 2, § 16, art 4, § 1).

11. GRAND JURY—USE OF RECORDS—CONSTITUTIONAL LAW.

Denial to defendants of the right to use testimony, records and findings of grand jury which had indicted defendants for conspiracy to violate the gambling laws *held*, not to have constituted a denial of constitutional rights of defendants.

12. CONSPIRACY—EVIDENCE—DISCRETION OF COURT.

Rulings of trial court as to admissibility of evidence in conspiracy cases on the basis of competency and relevancy are within its discretionary power and will not be reversed by the Supreme Court in the absence of a showing of prejudicial error; there being no precise rule of evidence as to what testimony is and what is not admissible.

13. CRIMINAL LAW—IRREGULARITIES—FAIR TRIAL.

The test to be applied in determining whether or not irregularities in a criminal case are grounds for reversal is not whether or not there were some irregularities but whether or not defendant had a fair and impartial trial.

14. SAME—CONSPIRACY—NEW TRIAL—EVIDENCE.

Denial of new trial in prosecution for conspiracy to violate the gambling laws *held*, not error, where there was sufficient testimony to support the verdict of guilty.

Appeal from Genesee; Dehnke (Herman), J., presiding. Submitted January 14, 1954. (Docket No. 62, Calendar No. 45,662.) Decided April 5, 1954. Rehearing denied June 7, 1954. Application for certiorari filed in the Supreme Court of the United States August 31, 1954.

Henry T. Pickett, Richard L. Kirby, Harold Wirsing, and another now deceased, were convicted of conspiracy to violate the gambling laws. Affirmed.

. *Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Chester R. Schwesinger,* Prosecuting Attorney, and *Albert H. Callahan,* Assistant Prosecuting Attorney, for the people.  ·

. *Cline & George,* for defendants Pickett and Kirby.

*Frank C. Smith,* for defendant Wirsing.

Bushnell, J.   Upon the complaint of the prosecuting attorney for a judicial investigation concerning certain criminal offenses, the Honorable Karl K. Leibrand, circuit judge of Bay county, as acting judge of the circuit court for the county of Genesee, conducted an inquiry under the provisions of CL 1948, § 767.3 *et seq.* (Stat Ann § 28.943 *et seq.*).   As a result of that inquiry a warrant was issued for the arrest of defendants Henry R. Pickett, Richard L. Kirby, Harold Wirsing and Edward R. Reinke (the latter now deceased) and 23 other persons, on the charge that they:

"did feloniously and unlawfully conspire, confederate, combine and agree together, with each other, and with divers other persons unknown, to violate sections 301, 302, 303, 304 and 305 of Act 328 of the Public Acts of Michigan for the year 1931, as amended, the same being provisions of the Michigan criminal code prohibiting gambling, betting, the taking of bets, the possession of gambling equipment, and the using or permitting the use of premises for gambling purposes by, among other things, taking, receiving and accepting bets upon the outcome of horse races, and keeping or maintaining places where bets upon the outcome of horse races were accepted."*

ᶜ Those charged were admitted to bail and at an examination held before the Honorable Shirley Stew-

---

* CL 1948, §§ 750.301–750.305 (Stat Ann §§ 28.533–28.537).—Reporter.

art, circuit judge of St. Clair county, acting in Genesee county, the defendants were represented by counsel and the people's witnesses were cross-examined. Motions to dismiss on the grounds of insufficiency of the prosecutor's petition and the orable Paul V. Gadola, circuit judge of Genesee county, to Judge Leibrand were granted by Honorable county, to Judge Leibrand was granted by Honorable H. Russell Holland, circuit judge of Oakland county, acting in Genesee county, on the ground of unlawful delegation of authority.

On appeal this Court held against the defendants and reversed Judge Holland. See *People* v. *Birch,* 329 Mich 38. Following the disposal of other interlocutory matters in which the Honorable John J. Simpson, circuit judge of Jackson county, and other circuit judges participated, trial was commenced on information before Honorable Herman J. Dehnke, circuit judge of Alcona, Iosco and Oscoda counties, sitting as a judge of the circuit court of Genesee county. Upon leave granted, Pickett and 3 other defendants have appealed from their conviction and sentence.

The 22 questions presented in this appeal have been considered. Some are the usual propositions raised in criminal appeals, but others are of unusual nature and merit extended discussion.

The first of these has to do with the claimed invalidity of the method of preparing the jury list in the city of Flint and the contention that this method is contrary to law. Several days before the trial commenced, a challenge to the array was filed, supported by the affidavit of William J. Kane, attorney for some of the defendants. This motion was denied.

The general statutory enactment respecting the preparation of jury lists is CL 1948, § 602.120 (Stat Ann § 27.245), which reads in part:

"The supervisor and township clerk of each township, and the supervisor or assessor, as the case may be, and alderman of each ward or assessment district in any city, shall, at the time appointed by law for the review of the assessment roll for each year, make a list of persons to serve as petit jurors, and a list of persons to serve as grand jurors for the ensuing year."

It is argued that the provisions of the charter and the ordinance of the city of Flint, under which the city assessor is required to compile and return a jury list, are in contravention of the statute and, therefore, should be held invalid.

The present method of providing a jury list for the city of Flint has been in use since 1935. The duties of the city assessor are specified in section 29 of the city charter which states:

"He shall perform such other duties as may be required by this charter or by ordinance."

This provision is enlarged by ordinance No 44, § 6.300, which reads:

"In addition to those duties heretofore specified, either by charter of the city of Flint or by ordinance thereof, the city assessor is hereby required from time to time to make lists of persons to serve as either grand or petit jurors from the city of Flint for the circuit court of the county of Genesee, Michigan, and to return the same as directed by law."

Flint is a home-rule city organized pursuant to PA 1909, No 279, as amended (CL 1948, § 117.1 et seq. [Stat Ann 1949 Rev § 5.2071 et seq.]).

It must be noted at the outset that the method used in Flint is not expressly provided for by the statute governing the preparation of jury lists. Flint has a commission form of government, although not a true form with respect to the jury law which contemplates a one-ward city. See CL 1948, § 602.125

(Stat Ann 1953 Cum Supp § 27.250). The charter of the city of Flint provides for only one assessor, who is a duly constituted city officer. Its municipal area is divided into 9 wards, and it has no aldermen. However, a commissioner is elected from each ward, but none of them has assessing powers. We can see no valid reason why the single assessing officer, in compiling jury lists where only one such officer is provided by the charter, acts in contravention with the general jury statute which mentions "aldermen of each ward or assessment district." On the contrary, the method in force is in substantial conformity with the statute as far as possible under the existing governmental structure.

In *Hewitt* v. *Saginaw Circuit Judge,* 71 Mich 287 (1888), some years before the home-rule act came into existence, Chief Justice SHERWOOD made an observation which seems applicable to the situation here. In speaking for the Court he said (pp 292, 293):

"It may be well contended that the statute invoked by respondent was never intended to apply to a city whose chartered provisions are like those contained in the East Saginaw charter. By that charter the assessor is a city officer, and assesses all the property of the city, and comes more or less in contact with all persons therein having the qualifications of jurors; while in cities incorporated under the general law the person assessing is but a ward officer, not acting beyond the limits of his ward."

Numerous cases are cited involving the priority of State statutes over local ordinances when a conflict exists. Among these is *Noey* v. *City of Saginaw,* 271 Mich 595, in which it was held that cities organized under the home-rule act are subject to legislative control. That case involved a conflict between the statute and ordinance in regard to hours of closing places for the sale of alcoholic liquor. The Court there said (p 599):

" 'It is the rule that, in the absence of specific statutory or charter power in the municipality, the provisions of an ordinance which contravene a State law are void. *People* v. *McGraw*, 184 Mich 233; 43 CJ, p 215.' "

The situation in the instant case is somewhat different. It is not so much whether there are conflicting provisions, but rather whether there is a compliance within the purport and meaning of the statute. The charter, in empowering the assessor to "perform such other duties as may be required by this charter or by ordinance," also imposes upon him the duty of compiling and returning the jury list as required by law. The record before us discloses that substantial compliance has been attained as far as is practically possible. We are therefore constrained to hold that, even though it may be argued that better practice would dictate that the assistance of the several commissioners should be obtained in the preparation of a jury list, the compilation of that list by the city assessor, unaided by the commissioners, is valid.

The second serious question in this appeal is the claim that the admission of the prior testimony of the State's witness, Wilber Arney, was in violation of appellants' right of confrontation and of due process as guaranteed by the 6th and 14th Amendments to the United States Constitution and by article 2, § 19, of the Michigan Constitution (1908), as well as contrary to the provisions of CL 1948, § 763.1 (Stat Ann § 28.854), and CL 1948, § 617.59 (Stat Ann § 27.908).

The Michigan constitutional provision on the right of confrontation reads in part:

"Sec. 19. In every criminal prosecution, the accused shall have the right to a speedy and public trial by an impartial jury, * * * to be confronted with the witnesses against him."

CL 1948, § 617.59, provides:

"Any competent witness in a cause shall not be excused from answering a question relevant to the matter in issue, on the ground merely that the answer to such question may establish, or tend to establish, that such witness owes a debt, or is otherwise subject to a civil suit; but this provision shall not be construed to require a witness to give any answer which will have a tendency to accuse himself of any crime or misdemeanor, or to expose him to any penalty or forfeiture, nor in any respect to vary or alter any other rule respecting the examination of witnesses."

Section 763.1 reads:

"On the trial of every indictment or other criminal accusation, the party accused shall be allowed to be heard by counsel and may defend himself, and he shall have a right to produce witnesses and proofs in his favor, and meet the witnesses who are produced against him face to face."

A statement regarding Arney's testimony is necessary.

When Arney was called to the stand at the trial he refused to testify on the ground that "the questions might tend to incriminate me." The jury was excused and the people offered to read into evidence the transcript of the testimony which he gave at the examination. The special prosecutor stated that this was the privilege of the people on the ground of nonavailability of the witness. In taking this position the prosecutor relied upon the provisions of CL 1948, § 768.26 (Stat Ann § 28.1049), which reads:

"Testimony taken at an examination, preliminary hearing, or at a former trial of the case, or taken by deposition at the instance of the defendant, may be used by the prosecution whenever the witness giving such testimony can not, for any reason, be produced

at the trial, or whenever the witness has, since giving such testimony, become insane or otherwise mentally incapacitated to testify."

Arney had previously testified a number of times before Judge Leibrand sitting as a one-man grand juror. On December 28, 1948, the day before the examination of defendants, Arney was given a grant of immunity with respect to the following questions:

"Question No 1: Have you ever been employed by Henry R. Pickett and/or Harold Wirsing, in the operation of any gambling enterprise being conducted in the city of Flint?

"Question No 2: If so, give details as to time, place and activity, and extent of such activities insofar as they were connected with the same."

At the trial and in the absence of the jury the court was informed that Arney was desirous of being advised as to his constitutional rights before he was called upon to testify. He was so advised by the trial judge and was told that under the immunity order granted him he had no right to refuse to testify. In the colloquy that ensued, Arney questioned the validity of his immunity order. The trial was adjourned in order to give him an opportunity to confer with his counsel, who at that time was out of town. When the court reconvened, the trial judge stated again, in the absence of the jury, that he had been advised by one Seidel, attorney for Arney, that he considered the immunity order "ineffective or insufficient." The court then permitted counsel on both sides to discuss the method in which the matter should be developed. The defense took the position that the testimony should be presented in the absence of the jury. The people, however, contended that Arney should be sworn and questioned up to the point of refusal. and that he should then be permit-

ted to make his claim of exemption in the presence of the jury.

Arney's counsel stated that in the event the court should overrule his or his client's objection, that he had advised Arney to refuse to testify and take the position that he would test the validity of the court's ruling on the contempt proceeding which might follow. The jury was then recalled, Arney was sworn and questioned to the point of refusal. The jury was excused and the court ruled that the immunity order adequately protected the witness and ordered him to proceed to answer. Arney and his attorney refused to respect the ruling. The ensuing colloquy was concluded by the court with the statement: "Well, is there anything either side thinks should be done further in the presence of the jury now?" The record shows that to this question there was no response.

The people then stated that they would offer in evidence the transcript of Arney's testimony at the examination. The defendants objected, raising the question of the right of confrontation, and stated that the witness was available. The court overruled this objection, recalled the jury and explained to it that upon Arney's refusal to testify, his testimony given at the examination in the cause had thereby become admissible. The authenticity of the transcript was established by the reporter and Arney was identified as the person who gave the testimony. One of the attorneys for defendants then requested that the testimony be presented on a question-and-answer basis, whereupon the prosecuting attorney read the questions and the special assistant prosecuting attorney read the answers. After this was completed, the record of appearances at the examination was read into the record, which disclosed that each of the appellants was present and represented by counsel who have continued in that capacity on this

appeal. During these proceedings the court asked the defense if they wished to read the cross-examination of Arney or have the prosecutor read it. It was indicated that they preferred to have the prosecution continue the reading and, as on direct examination, the cross-examination was read into evidence in question-and-answer form.

We are mindful of the serious nature of the constitutional rights involved in such practice. So far as we have been able to ascertain the precise question has not been previously passed upon by this Court. However, analogous situations have been discussed in the following cases: *People* v. *Myers,* 239 Mich 105; *People* v. *Moore,* 306 Mich 29; *People* v. *Hunley,* 313 Mich 688 and *People* v. *Johnston,* 328 Mich 213 (20 ALR2d 1001). See, also, extensive annotations of authorities in 15 ALR 495, as supplemented by 21 ALR 662; 79 ALR 1392; 122 ALR 425; and 159 ALR 1240.

The issue here involved, although discussed in appellants' brief with 3 other companion questions, resolves itself into whether the prior testimony of a witness at a preliminary examination may be admitted into evidence at the trial under the statutory provisions of CL 1948, § 768.26 (Stat Ann § 28.1049), heretofore quoted, when the recalcitrant witness is produced, had previously been granted immunity, but refuses to testify on the grounds of self-incrimination. Appellants contend that "testimony given at a preliminary examination or a former trial may not be used as substantive proof where the witness is available." 1 Gillespie, Michigan Criminal Law & Procedure (1st ed), § 419, p 485. This statement of the law is of sound authority. The questionable point is the construction which, in the light of the circumstances, shall be given to the word "available." This word is defined in Webster's New International Dictionary (2d ed), as being: "Capable of availing;

having sufficient power, force, or efficacy for the object; effectual; efficacious." It is defined in Black's Law Dictionary (3d ed), as: "Suitable; usable; at one's disposal; having sufficient force or efficacy; effectual."

Availability in the sense used by Gillespie must be broadly construed in the context in which it is found. This word does not mean physical presence alone, but is definitive of "having sufficient force or efficacy for the object," which object in this instance is the attainment of justice through the admission of the witness's former testimony.

The statute which permits the use of former testimony authorizes that use by the prosecution, "whenever the witness giving such testimony cannot, for any reason, be produced at the trial."

Under the facts recited, Arney, by invoking the privilege against self-incrimination, although having been granted immunity, made himself as "unavailable" as if he were deceased or absent from the jurisdiction.

Defendants, of course, had the constitutional right to be confronted by the witness. This right was accorded them at the preliminary examination when they had ample opportunity to cross-examine Arney who was there a witness confronting them. They may not be heard now to complain on this ground. *People* v. *Schepps,* 217 Mich 406 (21 ALR 658); *In re Rudnik,* 338 Mich 577; *People* v. *Myers, supra; People* v. *Moore, supra; People* v. *Hunley, supra;* and *People* v. *Johnston, supra.*

This Court has never departed from the rule that the constitutional rights of an accused are not abridged where the accused at any stage of the proceedings, upon the same accusation, has been once confronted by the witness against him, with an opportunity to cross-examine that witness. 1 Gillespie, Michigan Criminal Law & Procedure (1st ed), § 474, p 581.

Although no precise case in point has been found in Michigan, this particular question has been ruled upon in other States. In *Exleton* v. *State* (1925), 30 Okla Crim 224 (235 P 627), the accused at a preliminary hearing had been confronted by a witness against him and had the privilege of cross-examination. The witness subsequently refused to testify for the reason that such testimony would tend to incriminate him. The court then permitted the testimony of the witness at the preliminary hearing to be admitted into evidence. The court took into consideration the Oklahoma constitutional provision which provided that the accused in a criminal case shall have the right to be confronted by the witnesses against him, and held that the former testimony of the recalcitrant witness was properly admitted.

In *Bridges* v. *State,* 26 Ala App 1 (152 So 51) (certiorari denied, 292 US 633 [54 S Ct 718, 78 L ed 1487]), the witnesses' testimony was held admissible after a claim of privilege, the prosecution being authorized to read into evidence the former testimony. The court there said (p 4):

"This is not now an open question in this State, and while there are some decisions to the contrary, this court and the supreme court have spoken on the question and we see no reason to reopen the subject. The witness * * * having testified on a former trial of this case, with full opportunity for cross-examination and when called to testify on this trial he rendered himself incompetent as a witness without fault on the part of the State, the trial court properly allowed his testimony on the former trial to be read in evidence. * * * He thereby placed himself where he was not available to the State to be used as a witness."

To the same effect is *State* v. *Hill,* 143 Kan 791, (57 P2d 49).

Defendants also contend that an insufficient foundation was laid for the introduction of the testimony and that opportunity was not accorded them for cross-examination. The pertinent part of the record heretofore examined in this respect does not bear out this contention. The court offered defendants opportunity to raise further objection to the reading of the transcript of the testimony. That they then declined to exercise this prerogative of objection affords them no grounds for objection now.

Prejudicial error is predicated upon the reading of the transcript by the prosecutor and the special assistant prosecutor. This objection cannot be sustained because Mr. Cline, defendants' attorney, at the trial agreed that it should go in on a question-and-answer basis and acquiescence is plainly evident. No timely objection was then raised, and if this constituted prejudicial error, which we think not, the error was there waived.

Reversible error is also claimed in that the court placed undue weight on the transcript of the prior testimony in its charge to the jury concerning self-incrimination and immunity. The 3 paragraphs covering this question are not lengthy, nor does the explanation by the court on this point appear to be biased or prejudicial. Rather it is a succinct explanation which clarifies the effect of Arney's testimony.

Defendants further argue that reversible error came into the case when the people were permitted to examine their witness, Louis E. Zumsted, regarding the telegraphic equipment (news ticker) used in the operation of gambling enterprises after this witness disclosed that he had been indicted in a similar matter in another county. Appellants argue that the jury was led to believe that a State-wide gambling conspiracy existed.

We have always been reluctant to reverse where improper testimony has inadvertently crept into the

record through no fault of counsel. An examination of this testimony requires the conclusion that the statement regarding other matters did not prejudice the defendants to the extent that a mistrial was mandatory. On the contrary, we agree with the statement of the trial judge who, in ruling on this point, said:

"Well, as it appears to me now, I think counsel exaggerate in their own minds the danger to the fairness of the trial, from the standpoint of the defendants, and the motion for a mistrial may be considered denied."

If any error existed, it was sufficiently cured by the court who, in charging the jury, said:

"Another cautionary instruction, you should not complicate the performance of your duty by speculating on the reasons which were responsible for some of the witnesses refusing to answer questions or testify, and I should also say to you that no claim is made that if the conspiracy charged in this case existed, it had any ties or connections beyond Genesee county."

The statute on which the information is based reads:

"Any person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this State, shall be guilty of a felony, punishable by imprisonment in the State prison not more than 5 years or by a fine of not more than 2,500 dollars." CL 1948, § 750.505 (Stat Ann § 28.773).

In attacking the validity of the statute and the information, defendants argue that:

"(7) The information is so vague, indefinite and uncertain as not to inform the defendants or any of them of the nature and cause of the accusations against them.

"(8) The statute (CL 1948, § 750.505 [Stat Ann § 28.773]) upon which the information is based, is subject to the infirmity last aforesaid because it is so vague, indefinite and uncertain as not to enable the defendants to know what is forbidden, and constitutes a delegation by the Michigan legislature to courts and juries of the legislative power to determine what acts should be held to be criminal and punishable, and such statute, therefore, violates the due process clause of section 1 of the 14th Amendment of the Constitution of the United States, and article 2, § 16 and article 4, § 1 of the Michigan Constitution (1908).

"(9) The language of the statute (CL 1948, § 750.505 [Stat Ann § 28.773]) does not constitute a fixing of an ascertainable standard of guilt and is not adequate and sufficient to inform the defendants of the nature and cause of the accusations against them.

"(10) The information and the statute upon which the same is based, is repugnant to the due process clause of the 14th Amendment of the United States Constitution and of article 2, § 16 of the Michigan Constitution (1908), and is therefore void.

"(11) The information and the statute upon which the same is based, purporting to subject persons to punishment for crime, fails to define what conduct is sought to be made criminal and constitutes an unlawful delegation of legislative power to the courts; being violative of the due process clause of the Federal and State Constitutions.

"(12) It being alleged the substantive offense has been committed, the defendants may not be prosecuted under the scatter-gun of conspiracy."

These questions do not merit individual consideration, notwithstanding the fervor of the argument of counsel. This Court has previously adjudicated these very contentions and our observations in the decisions hereafter cited fully answer the questions raised. *People* v. *Summers,* 115 Mich 537; *People*

v. *Chambers,* 279 Mich 73; *People* v. *Causley,* 299
Mich 340; *People* v. *Ormsby,* 310 Mich 291; *People*
v. *Norwood,* 312 Mich 266; *People* v. *DeLano,* 318
Mich 557; *People* v. *Simms,* 322 Mich 362; *People* v.
*Pichitino,* 337 Mich 90 (certiorari denied, 347 US 913
[74 S Ct 477, 98 L ed —]). What was said in these
cases is applicable here, and the validity of the stat-
ute, therefore, must be sustained.

Appellants quote at length from Mr. Justice Jack-
son's concurring opinion in *Krulewitch* v. *United
States,* 336 US 440 (69 S Ct 716, 93 L ed 790), and
urge this Court to adopt the view expressed therein.
This case has been examined. Its application to
Federal law in regard to extrajudicial declarations
of a coconspirator is unquestioned but its holding
is not applicable here. However persuasive the rea-
soning of the *Krulewitch* opinion may appear to
counsel, it does not justify our overruling our own
decisions on the constitutionality of the statute in
question.

Among the errors assigned by appellants relative
to the grand jury proceedings are those pertaining
to denial of their alleged right to use the testimony,
records and findings of the grand jury, thus depriv-
ing them of claimed constitutional rights. Some 20
pages of the briefs are devoted to the claimed merits
of this contention and many authorities are cited
from other jurisdictions which are undoubtedly en-
lightening and persuasive, and it is argued that we
should accept "this enlightened view." A point-by-
point discussion is unwarranted in view of the deci-
sions of this Court on this subject, which are control-
ling and sufficient. *People* v. *Butler,* 221 Mich 626;
*People* v. *Baxter,* 245 Mich 229; *People* v. *McCrea,*
303 Mich 213; and companion cases in 303 Michigan,
arising out of the one-man grand jury proceedings,
pages 287 *et seq.; People* v. *Roxborough,* 307 Mich

575; *In re Slattery,* 310 Mich 458 (certiorari denied, 325 US 876 [65 S Ct 1553, 89 L ed 1993]); *People* v. *Birch,* 329 Mich 38 (prior decision in this cause on motion to dismiss).

The perspicuousness of the reasoning in the aforecited decisions of this Court affords no other construction in the instant case. No valid reason is found here to overrule the binding effect of these decisions. In light of the foregoing, defendants' contention on these points cannot be sustained.

Other errors assigned are found to be without merit; nor is specific discussion of them necessary. Upon examination of the record as a whole, we conclude that the defendants had a fair trial and were not deprived of due process of law. Their constitutional rights were fully protected.

Notwithstanding the length of this opinion, in the light of appellants' insistence, we add the following:

The rule relating to admission of testimony in conspiracy cases was stated in *People* v. *Fleish,* 321 Mich 443, 459, where it is said:

"In conspiracy cases it is quite impossible to formulate a precise rule of evidence as to what testimony is and what is not admissible as being competent and relevant. Within reasonable bounds the rulings of this character are within the discretion of the trial court and in the absence of a showing of prejudicial error such rulings do not afford a ground of reversal."

See, in this regard, CL 1948, § 768.29 (Stat Ann § 28.1052).

What was said in *People* v. *Mosley,* 338 Mich 559, 566, is equally applicable here:

"In determining whether irregularities in a criminal trial are grounds for reversal, the test to be applied is not whether there were some irregularities but whether defendant had a fair and impartial trial.

*People* v. *O'Hara,* 278 Mich 281; *People* v. *Logie,* 321 Mich 303."

The trial judge did not err in denying a new trial. There is sufficient testimony and ample proof to support the verdict.

The judgment and sentence appealed from is affirmed.

BUTZEL, C. J., and CARR, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.