PEOPLE v. O'NEAL

1. CONSTITUTIONAL LAW—CRIMINAL LAW—COMMON LAW—STATUTES.
   The statute providing that any person who shall commit any offense indictable at common law, for which no statute provides punishment, shall be guilty of a felony is not unconstitutionally vague (MCLA § 750.505).

2. APPEAL AND ERROR—COURTS.
   An intermediate appellate court is bound by an opinion of the Supreme Court.

3. RIOT—INCITING TO RIOT—STATUTES—CONSTRUCTION OF STATUTES.
   Inciting to riot is a violation of the statute which provides that any person who shall commit any offense indictable at common law, not expressly punishable by statute, shall be guilty of a felony rather than of the statute which provides that it shall be the duty of certain officials to go among 12 or more armed persons, or 30 persons, armed or unarmed, and to command such persons that are unlawfully, riotously or tumultuously assembled to disperse (MCLA §§ 750.505, 750.521).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 8] 16 Am Jur 2d, Constitutional Law § 552.
[2] 20 Am Jur 2d, Courts § 201.
[3, 7] 46 Am Jur, Riots and Unlawful Assembly § 14.
[4] 46 Am Jur, Riots and Unlawful Assembly § 2.
[5, 6] 5 Am Jur 2d, Appeal and Error § 702.
[8, 9] 16 Am Jur 2d, Constitutional Law § 347.

4. RIOT—COMMON LAW—DEFINITIONS.

A riot at common law may be defined as a tumultuous disturbance of the peace by three or more persons, assembling together at their own authority, with the intent mutually to assist one another against all who shall oppose them, and afterward putting the design into execution in a turbulent and violent manner, whether the object in question be lawful or otherwise.

5. APPEAL AND ERROR—CRIMINAL LAW.

The Court of Appeals will not hear a criminal case anew upon the record and attempt to weigh the evidence.

6. APPEAL AND ERROR—CRIMINAL LAW—CONFLICTING EVIDENCE.

Determination of a criminal case will not be set aside on appeal where the evidence is conflicting and there was some evidence before the trial court on each of the crime's essential elements.

7. RIOT—INCITING TO RIOT—DEFINITIONS.

Inciting to riot is conduct including words, signs and language as would naturally lead or urge other men to engage upon conduct which, if completed, would make a riot.

8. RIOT—CONSTITUTIONAL LAW—FREE SPEECH.

Prosecution for inciting to riot is not proscribed by the requirements of the First Amendment of the United States Constitution where a speech creates a clear and present danger of a riot (US Const, Am 1).

9. RIOT—CONSTITUTIONAL LAW—FREE SPEECH—CLEAR AND PRESENT DANGER.

A clear and present danger of a riot existed where defendant's speech, which resulted in his arrest, occurred just outside of Detroit approximately 12 hours after that city had erupted in a full scale riot, defendant's yelling and screaming had helped to cause a crowd to grow, and there was eyewitness testimony that some persons in the crowd had begun to advance on the police.

Appeal from Wayne, Horace W. Gilmore, J. Submitted Division 1 March 2, 1970, at Detroit. (Docket No. 5,502.) Decided March 23, 1970.

Billy O'Neal was convicted of inciting to riot. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Milton R. Henry,* for defendant.

Before: LESINSKI, C. J., and QUINN and V. J. BRENNAN, JJ.

LESINSKI, C. J.   Defendant Billy O'Neal and two codefendants were tried before the court, after waiving their right to jury trial, on the charge of undertaking to incite a riot. MCLA § 750.505 (Stat Ann 1954 Rev § 28.773). The trial court acquitted both codefendants and found O'Neal guilty of inciting to riot. Defendant brings this appeal as of right.

On July 23, 1967, at approximately 5:20 p.m., defendant was observed walking down Hamilton Street in Highland Park with a group of four or five others. They stopped at the corner of Hamilton and Ford Avenue, where they conducted themselves in a loud and noisy manner. Their number grew to 10 or 15 persons and in the immediate vicinity there were approximately 60 or 70 persons, many of whom stood watching from their porches. Based on the actions and statements allegedly made by defendant, he was charged with undertaking to incite a riot.

On appeal defendant raises four issues which we address in the order raised.

1. *Is MCLA § 750.505 (Stat Ann 1954 Rev § 28-.773) and the information based on the statute unconstitutionally vague?*

MCLA § 750.505 (Stat Ann 1954 Rev § 28.773) provides:

"Any person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty of a felony, punishable by imprisonment in the state prison not more than five years or by a fine of not more than $10,000, or both in the discretion of the court."

In this Court's recent opinion of *People* v. *Lewis* (1969), 20 Mich App 653, we held the statute made inciting to riot a felony. We stated at p 657:

"In summary, we hold that there was at the time the informations were issued no statutory prohibition against rioting or inciting to riot; that rioting and inciting to riot were indictable offenses at the common law (even though misdemeanors), and that by the provisions of CLS 1961, § 750.505 these offenses were made felonies."

In *People* v. *Pickett* (1954), 339 Mich 294, defendant raised numerous arguments attacking the constitutionality of the statute. In *Pickett,* as here, the arguments centered around the alleged vagueness of the statute. Beginning at p 310 the Court stated:

"These questions do not merit individual consideration, notwithstanding the fervor of the argument of counsel. This Court has previously adjudicated these very contentions and our observations in the decisions hereafter cited fully answer the questions raised. *People* v. *Summers* (1898), 115 Mich 537; *People* v. *Chambers* (1937), 279 Mich 73; *People* v. *Causley* (1941), 299 Mich 340; *People* v. *Ormsby* (1945), 310 Mich 291; *People* v. *Norwood* (1945), 312 Mich 266; *People* v. *DeLano* (1947), 318 Mich 557; *People* v. *Simms* (1948), 322 Mich 362; *People* v. *Pichitino* (1953), 337 Mich 90, *cert denied* (1954), 347 US 913 (74 S Ct 477; 98 L Ed 1069). What was

said in these cases is applicable here and the validity of the statute, therefore, must be sustained."

Defendant argues, however, that the cases cited by the Court in *Pickett* do not support the conclusion of the Court and do not meet the arguments of defendant. Defendant states: "It is hard to conclude anything other than that the constitutional questions raised in the *Pickett* case, and reasserted herein have not yet been thoroughly and finally considered by the Courts of Michigan."

Although we are not unimpressed by defendant's thorough and well reasoned brief, we conclude that the arguments raised in the instant case were fully presented to the Court in *Pickett* and rejected. If, as defendant argues, *Pickett* was incorrectly decided, it is for the Supreme Court to say. As an intermediate appellate court, we are bound by the Supreme Court's opinion in *Pickett*.

2. *May defendant be tried for undertaking to incite three or more persons to riot when MCLA § 750.521 (Stat Ann 1954 Rev § 28.789) requires 12 or more armed persons, or 30 or more unarmed persons?*

MCLA § 750.521 (Stat Ann 1954 Rev § 28.789),[1] provides:

"If any persons, to the number of 12 or more, being armed with clubs, or other dangerous weapons, or if any persons, to the number of 30 or more, whether armed or not, shall be unlawfully, riotously or tumultuously assembled in any township, city or village, it shall be the duty of the mayor and each of the aldermen of such city, the supervisor of such township, the president and each of the trustees or members of the common council of such village, and of every justice of the peace, living in such township, city or village, and also for the sheriff of the county

[1] Repealed by PA 1968, No 302.

and his deputies, and any member of a city police force and any member of the Michigan state police, to go among the persons so assembled, or as near to them as may be with safety, and in the name of the people of this state, to command all the persons so assembled immediately and peaceably to, disperse: Provided, however, That the above provision with reference to any member of a city police force shall not apply to any such police officer while he is privately employed."

In *People* v. *Lewis, supra,* at p 656, this Court held that inciting to riot does not come under this statute, but rather under MCLA § 750.505, *supra.* At p 657 we stated:

"Examination of CL 1948, § 750.521 *et seq.* (Stat Ann 1954 Rev § 28.789 *et seq.*) shows that it does not expressly prohibit or punish inciting to riot or rioting. Primarily, the statute sets forth duties and procedures to be followed by certain officials if 12 or more armed persons or 30 or more persons, armed or not, unlawfully, riotously or tumultuously assemble.

"Nor do we construe the statute as impliedly prohibiting inciting to riot and rioting since such an implication is unwarranted inasmuch as both were indictable offenses at common law, and as such, absent an express statutory punishment, are punishable under CLS 1961, § 750.505 as felonies."

Inasmuch as MCLA § 750.521, *supra,* does not apply to the instant case, the requirements of 12 or more armed persons or 30 or more unarmed persons also does not apply. As noted in 4 Gillespie, Mich Criminal Law and Procedure (2d ed), § 2206, p 2433:

"A riot at common law may be defined as a tumultuous disturbance of the peace by three or more persons, assembling together at their own authority, with the intent mutually to assist one another

against all who shall oppose them, and afterwards putting the design into execution in a turbulent and violent manner, whether the object in question be lawful or otherwise."

3. *Was the evidence adduced at trial sufficient to support defendant's conviction?*

At trial the court received the following testimony concerning defendant's conduct:

(1) Patrolman Bledsoe testified that he heard defendant talking in a loud voice, trying to get the people to go home and get their guns and kill the police.

(2) Officer Solomon testified that he heard defendant shouting "Let's overthrow the police." He also testified, referring to defendant: "He said, 'Go home and get your guns and kill all these dirty rotten * * * ' I am not going to use the exact language. 'We're going to burn this town down like we burned Detroit.'" Officer Solomon also stated that after defendant was arrested: "He yelled at the top of his voice that, 'Look what they're doing to me. Don't let them take me. Shoot them. Kill them.'"

(3) Officer Neal, referring to defendant, testified: "[A]s we started to place them under arrest, he was screaming, 'Don't let these White M.F. cops arrest us. We outnumber them. Don't let them take us in.'"

(4) Officer Pitton testified that defendant was calling slogans to the people and that he stated: "Go home. Get your guns. We're going to kill these * * * cops. They're not going to take us. We're going to burn down Highland Park like we did Detroit."

(5) Defendant and his companions testified that they were walking down the street peacefully when they were besieged by police.

The trial court recognized the conflict in the testimony and resolved the differences against defendant. The court found that defendant intentionally called to the crowd to burn and kill and to take over Highland Park and that the defendant did incite a riot.

The Court of Appeals will not hear a case anew upon the record and attempt to weigh the evidence. When the evidence is conflicting, the trial court's determination will not be set aside when there was some evidence before it on each of the crime's essential elements. *People* v. *Dolphus* (1966), 2 Mich App 229; *People* v. *Williams* (1966), 3 Mich App 272; *People* v. *Ritzema* (1966), 3 Mich App 637; *People* v. *Bennett* (1966), 3 Mich App 326.

The trial court correctly defined inciting to riot as conduct including words, signs and language as would naturally lead or urge other men to engage upon conduct which, if completed, would make a riot. *Commonwealth* v. *Apriceno* (1938), 131 Pa Super 158 (198 A 515); *Heard* v. *Rizzo* (ED Pa, 1968), 281 F Supp 720; *Commonwealth* v. *Hayes* (1965), 205 Pa Super 338 (209 A2d 38); *State* v. *Cole* (1959), 249 NC 733 (107 SE2d 732). The trial court had testimony before it establishing that the defendant by his words and acts urged others to riot and therefore, based upon the standards of review expressed above, the lower court's findings should stand.

4. *Was the prosecution for the crime of inciting to riot proscribed by the requirements of the First Amendment*[2] *to the United States Constitution?*

Although freedom of speech is the cornerstone of any free society, it has long been recognized that it

---

2 "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

"is not an unlimited, unqualified right, but that the societal value of speech must, on occasion, be subordinated to other values and other considerations." *Dennis* v. *United States* (1951), 341 US 494, 503 (71 S Ct 857, 864; 95 L Ed 1137, 1149). One of the "other considerations" is where the speech creates a "clear and present danger" of a riot. Writing for a unanimous court, Justice Holmes made the classic statement in *Schenck* v. *United States* (1919) 249 US 47, 52 (39 S Ct 247, 249; 63 L Ed 470, 473, 474):

"The question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent."

Defendant argues that no "clear and present danger" existed in the instant case. The record reveals that the incident resulting in defendant's arrest took place just outside of Detroit in Highland Park. It occurred approximately 12 hours after Detroit had erupted in a full scale riot. The trial court found that defendant's yelling and screaming had helped cause a crowd to grow and testimony was received that some persons began to advance on the police. Based on these facts and the statements attributed to defendant, we conclude that a clear and present danger did exist.

Affirmed.

All concurred.