PEOPLE v. SCHEPPS.

1. WITNESSES—CRIMINAL LAW — REFRESHING MEMORY — DEFENDANT'S COUNSEL ENTITLED TO EXAMINE MEMORANDA.

In a prosecution for robbery while armed, where a witness for the prosecution, while testifying, used memoranda with which to refresh his memory, the trial court was in error in denying defendant's request to examine said memoranda, irrespective of the question as to

On right for purpose of cross-examination to inspect paper used by witness to refresh memory, see note in 22 L. R. A. (N. S.) 706.

whether such examination would have been of any assistance to defendant or not.

2. EVIDENCE — CRIMINAL LAW — WITNESSES—TESTIMONY AT PRELIMINARY EXAMINATION ADMISSIBLE WHERE WITNESS CANNOT BE FOUND.

The testimony of a witness at the preliminary examination of defendant charged with robbery, who was there represented by counsel and the witness fully cross-examined, was properly admitted upon the trial on a showing that the witness had since disappeared, and, although subpœnaed, could not be produced to testify before the jury, and that the prosecution was without fault.

Error to recorder's court of Detroit; Heston (William M.), J. Submitted January 13, 1922. (Docket No. 156.) Decided February 8, 1922.

Joseph Schepps was convicted of robbery while armed, and sentenced to imprisonment for not less than 20 nor more than 40 years in the State prison at Marquette. Reversed.

*Chawke & Sloan,* for appellant.

*Merlin Wiley,* Attorney General, *Paul W. Voorhies,* Prosecuting Attorney, and *Harry S. Toy,* Assistant Prosecuting Attorney, for the people.

STEERE, J. Defendant was convicted in the recorder's court of the city of Detroit of the statutory crime of robbery while armed, under section 15206, 3 Comp. Laws 1915. It was shown by the prosecution that about 12:30 in the afternoon of September 29, 1920, a collector for the Great Atlantic & Pacific Tea Company named Killoran was driving his Ford automobile along Crane avenue north of Kercheval when a large sedan car came past him from his rear, crowded him to the curb and compelled him to stop.

Two men then jumped out of the large car, each armed with a revolver, held him up, pulled his cap down over his eyes and robbed him of a Boston bag containing $1,825 in money, order forms and other papers, also a kodak, padlock and other small articles. They then jumped into the waiting sedan car which drove away. Defendant was subsequently arrested and brought to trial for assisting in the consummation of this crime. Testimony was introduced by the prosecution tending to identify him as the driver of the sedan car. He denied any participation in or knowledge of the hold-up, claiming to have been elsewhere at that time.

The robbery not being disputed, all testimony in conflict related to defendant's identification by the prosecution as driver of the sedan and his proof of alibi. In support of the latter claim he introduced testimony of several witnesses as to his whereabouts, and what he was doing during the time the prosecution's testimony showed the robbery took place. A barber named Wilson testified defendant came to his shop that day shortly before 12 o'clock and remained until after 1 o'clock, during which time witness cut his hair and shaved him. Other witnesses testified to seeing defendant there during that time. A witness named Wisling testified to meeting defendant in Brennan's lunch room near the Temple Theater about 1:30 where they ate lunch together, remaining until near 2 o'clock. Dr. McGilvrey testified to defendant being in his office that day for dental work from about 2 p. m. until after 5.

A member of the police department named Fraley, who had been assigned to the case, was called by the prosecution in rebuttal, his testimony being directed to contradicting defendant's proof of alibi. While on the stand he used memoranda which he held in his

hand and defendant's counsel on cross-examination asked him and was answered in part as follows:

"*Q.* Now, you were reading off something there, weren't you?

"*A.* Yes, sir.

"*Q.* Will you leave me see it, please, what you were reading?

"*Mr. N*———Just a minute, I don't think counsel is entitled to it at all. * * *

"*Q.* Now, without that memoranda could you tell whether he said he left his room at 1 p. m. or left the barber-shop?

"*A.* Mr. C———, I have got a whole lot on my mind to remember.

"*Q.* You don't need to argue with me, though. Can you remember his exact conversation without the memoranda?·

"*A.* No, I can't and get it correct."

When counsel asked the witness if he might see what he had been reading from and counsel for the prosecution objected, defendant's counsel urged that he was entitled to see the paper used by the witness to refresh his recollection and asked the court to so hold. To this the court said, "You are denied the right to take this man's private memoranda he is testifying from." The ruling was in violation of a well settled rule of evidence in both civil and criminal cases, which it has been said should be more strictly adhered to, if anything, in the latter than in the former. The reasons for the rule have been so often discussed in text books and published decisions that it seems unnecessary to repeat them, but for those not familiar with the subject and of inquiring mind a lead may be found in the following citations: *Duncan* v. *Seeley*, 34 Mich. 369; *People* v. *Lyons*, 49 Mich. 78; *Cortland Manfg. Co.* v. *Platt*, 83 Mich. 419; Potter's Michigan Evidence, p. 432; *State* v. *Deslovers*, 40 R. I. 89 (100 Atl. 64) ; *Miller* v. *Petticoat Co.*, 192 App. Div. 559 (183 N. Y. Supp. 97) ; *Tibbetts* v. *Stern-*

*berg,* 66 Barb. (N. Y.) 201; *Green* v. *State,* 53 Tex. Crim. Rep. 490 (110 S. W. 920, 22 L. R. A. [N. S.] 706) ; *Cox* v. *Norton,* 1 Pen. & W. (Pa.) 414; *Chute* v. *Minnesota,* 19 Minn. 271; *Morris* v. *United States,* 80 C. C. A. 112, 149 Fed. 126 (9 Ann. Cas. 558) ; 1 Greenleaf on Evidence (14th Ed.), p. 566; Rapalje's Law of Witnesses, §. 282; Wigmore on Evidence, §§ 753, 762, 1861; and 5 Jones' Commentaries on Evidence (1914), sometimes called "The Blue Book of Evidence," § 874 *et seq.,* where the subject is fully discussed with abundant citation of decisions.

Whether an examination of the memoranda in this case would have been of any assistance to the defendant is not the question. For the court to pre-judge and determine that it would not is an invasion of the province of the jury and reversible error. Upon this it is said in *Tibbetts* v. *Sternberg, supra:*

"The right of a party to protection against the introduction against him of false, forged and manufactured evidence, which he is not permitted to inspect, must not be invaded a hair's-breadth. It is too valuable to be trifled with, or to permit the court to enter into any calculation as to how far it may be encroached upon without injury to the party."

One other question which is likely to arise on re-trial of the case calls for more serious consideration. Upon the trial the prosecution was permitted to read to the jury the testimony of an absent witness named Florence Earl, taken before the committing magistrate on defendant's preliminary examination. She was an important witness for the prosecution whose testimony was essential in establishing a material link in its line of proof, her narration being to the effect that one of the accused's co-defendants roomed at her house where she saw them on that day together, both before and after the robbery took place; that in the morning defendant and a man named Renaud came

to the house in a touring car for her roomer and the three drove away together, returning shortly before 1 o'clock, having a little satchel with them, and later she saw them go into a bedroom where they remained some time; that the satchel, a tire grip and some papers were afterwards put in the kitchen stove and burned up except two papers which witness rescued from the stove. These papers were recognized by Killoran as his identification card and an order blank which were in his bag when taken from him during the hold-up. She also testified to seeing a padlock which was in the grip, and admitted seeing at her house that day a camera which was identified as Killoran's. Her testimony as a whole shows a familiar acquaintance with those parties and the freedom with which they displayed their booty in her presence gives room for the inference that her home was regarded by them as a safe rendezvous.

As a foundation for introducing her testimony the prosecution showed that on his preliminary examination defendant was represented by counsel who fully cross-examined Mrs. Earl, and she was timely subpœnaed by the prosecution to appear as a witness in the recorder's court to which defendant was bound over for trial and her name indorsed on the information; that she failed to appear at the trial in response to the subpœna, a bench warrant was issued for her apprehension, put into the hands of an officer, and the case continued for trial until a later day; that diligent search was made by him and other officers in Detroit and elsewhere, making many visits to her previous known place of residence where she no longer was to be found; it was learned that about three weeks prior to time of the trial she had sent her furniture to a storage house, from which it was later taken, and left the city; rumors that she was in Canada were diligently followed up. Officers made search for her

in Windsor and elsewhere, watched ferry docks and made inquiry wherever there was possibility of any information being obtained. They located her parents' home in Ford, Ontario, and interviewed her father and two sisters found living elsewhere, who all denied any knowledge of her whereabouts, but stated that she was somewhere in Canada although they did not know where. It was shown that persistent efforts had been unsuccessfully made to find this witness since a *capias* was issued for her and defendant's trial adjourned several times because of her absence. The prosecuting attorney, who had been sworn in the case, was then permitted to read to the jury the testimony of the absent witness as taken before the magistrate and reduced to writing.

For the defense it is earnestly contended that the admission of this testimony violated the constitutional right of the defendant in a criminal case to be confronted by the witnesses against him. That there are exceptions to the strict letter of this rule is conceded. Counsel for defendant quote the following from Cooley on Constitutional Limitations (7th Ed.), p. 451:

"If there were a former trial on which he (witness) was sworn, it seems allowable to make use of his deposition, or of the minutes of his examination, if the witness has since deceased, or is insane, or sick and unable to testify, or has been summoned but appears to have been kept away by the opposite party."

While the authorities in different jurisdictions are more or less at variance upon the extent to which exceptions may be entertained, the general rule relative to admission of an absent witness's former testimony given on preliminary examination is formulated with citation of sustaining decisions in 16 C. J. p. 757, as follows:

"The testimony given by a witness on the preliminary examination or on a former trial is not admissible as substantive evidence, unless it is satisfactorily shown by the side offering the evidence that such an examination or trial was had in a judicial tribunal; that the witness was sworn and testified; that accused was present and had an opportunity for cross-examination; that the parties and issues were substantially the same as in the case on trial; and that the witness has since died, or has become insane or has left the State permanently or for an indefinite time, or is unable to attend and testify on account of sickness or physical disability, or after due diligence cannot be found."

In 10 R. C. L. p. 968 it is said that although there is authority to the contrary,—

"The prevailing rule is that the right of confrontation is satisfied, in cases of necessity, if the accused has been once confronted by the witness against him in any stage of the proceedings upon the same accusation, and has had an opportunity of a cross-examination, by himself or by counsel, in his behalf."

Measured by the foregoing requirements the testimony read was clearly admissible. So far as occasion has arisen it can fairly be contended that the conclusions reached by this court are in general harmony with those views, although we do not find that the exact question of an absent witness whose presence cannot be procured because beyond the jurisdiction of the court has been directly passed upon. Counsel for the people quote as the rule in this State the following from Potter's Michigan Evidence, p. 767:

"Where a witness who was examined and cross-examined on a former trial, has died pending a retrial of the case, or has become sick, if the sickness renders the witness wholly unable to testify; or is insane; or is out of the jurisdiction of the court; or appears to have been kept away by the action of the respondent, his testimony at a former trial is admissible."

The decisions there cited and others which may be found fairly well support the text except to the proposition "or is out of the jurisdiction of the court." All we find in *People* v. *Long,* 44 Mich. 296 (cited to that point), is the following reflection:

"The showing in regard to an absent witness, George Sisson, who testified on a former trial, was not sufficient to justify proving his former statements. It does not appear what efforts were made to secure his presence, or why his deposition was not obtained."

We are satisfied, however, that the reasons for the exception stated in *People* v. *Droste,* 160 Mich. 66, where the evidence could not be produced because of sickness, is equally applicable to the present situation. It was there said:

"This author (Wigmore) treats the subject exhaustively (vol. 2, §§ 1395-1418), and concludes that the great weight of authority favors the admission of such evidence, as well in criminal cases as in civil cases, and where the illness is temporary only, as well as where it is permanent, or the witness has died. And upon principle, we are unable to appreciate any good reason why the people or respondent should have the benefit of such evidence, in cases where the witness is dead or permanently ill, and be denied that benefit when the witness is only temporarily ill. In all three cases, the important fact is identical—the witness cannot be produced in person to testify before the jury."

In the instant case we find the important fact that the witness could not be produced to testify before the jury established without fault of the prosecution as positively as though she were ill, insane or dead. In this very case, upon the same issue at the preliminary hearing, defendant was confronted by the witness and by his counsel availed himself of the opportunity for full cross-examination. Under the circumstances

shown his right to be confronted by the witness was not abridged.

For the error pointed out the case must stand reversed with a re-trial granted.

FELLOWS, C. J., and WIEST, STONE, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.