PEOPLE v WHITE

1. Witnesses—Criminal Law—Impeachment—Party's Own Witnesses—Res Gestae Witnesses—Statutes.

A party cannot impeach his own witness as a general rule; however exceptions have been made where the prosecution in a criminal case is required to call res gestae witnesses (MCLA 767.40a).

2. Witnesses—Criminal Law—Refusal to Testify—Prior Recorded Testimony.

A prosecution witness who testified at a defendant's first trial but refuses to testify altogether at the defendant's second trial for a particular offense is deemed unavailable and the witness's prior recorded testimony is admissible as substantive evidence for the prosecution.

3. Witnesses—Criminal Law—Impeachment—Party's Own Witness—Surprise—Prior Recorded Testimony—Prior Inconsistent Statements.

The prosecution may impeach its own witness's credibility with prior inconsistent statements based on surprise where the witness did not inform the prosecution of his intention to testify favorably to the defendant prior to taking the stand; the prosecution may introduce prior recorded testimony given by the witness at a previous trial and prior inconsistent statements of the witness for impeachment purposes.

4. Witnesses—Criminal Law—Defendant as Witness—Impeachment—Confessions—Constitutional Law—Violation of Rights.

A confession obtained by police from a defendant in violation of his constitutional rights may not be used in the prosecution's case-in-chief, but the confession may be used for impeachment purposes if the defendant chooses to take the stand to deny his guilt.

---

References for Points in Headnotes

[1] 29 Am Jur 2d, Evidence § 708.
   58 Am Jur, Witnesses § 792 *et seq.*
[2] 58 Am Jur, Witnesses §§ 771, 774, 781.
[3] 58 Am Jur, Witnesses § 790.
[4] 58 Am Jur, Witnesses § 773
[5] 29 Am Jur 2d, Evidence §§ 555–557.
   58 Am Jur, Witnesses § 546.
[6] 58 Am Jur, Witnesses §§ 575–577.
[7] 81 Am Jur 2d Witnesses §§ 623, 625, 626.

5. WITNESSES—CRIMINAL LAW—DEFENDANT AS WITNESS—STATEMENTS TO NEWS REPORTER—CONSTITUTIONAL LAW.

A news reporter has no duty to give an accused any *Miranda* warnings before obtaining a statement; statements made by the accused and recorded in a filmed interview by a television news reporter which were not found to be in any way coerced or involuntary may be laid before the jury.

6. WITNESSES—CRIMINAL LAW—UNRESPONSIVE TESTIMONY—ADMISSION OF GUILT.

Refusal to declare a mistrial when a prosecution witness volunteered that a defendant in a trial for murder had admitted participation in the decedent's murder was not reversible error where the prosecution did not elicit the testimony purposely, the judge immediately ordered the unresponsive testimony striken from the record, the defense did not ask for a curative instruction to the jury, and the defense chose to cross-examine the witness fully about the statements.

7. WITNESSES—CRIMINAL LAW—IMPEACHMENT—PARTY'S OWN WITNESS—ADVERSE WITNESSES.

The prosecution may introduce prior recorded testimony and prior inconsistent statements of its own witness for impeachment purposes where the witness had promised to testify for the prosecution in accord with testimony given at a previous trial but after the trial began informed the prosecution of a change in intentions, and where the trial judge determines the witness to be adverse at the time he takes the stand.

Appeal from Oakland, William J. Beer, J. Submitted April 10, 1975, at Lansing. (Docket No. 20202.) Decided October 13, 1975. Leave to appeal applied for.

Adoise White was convicted of first-degree murder. Defendant appealed. Reversed, 40 Mich App 433 (1972). Defendant was retried and convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Robert C. Williams,* Chief Appellate Counsel, for the people.

*Charles J. Porter,* for defendant.

Before: V. J. Brennan, P. J., and D. E. Holbrook and M. F. Cavanagh, JJ.

V. J. Brennan, P. J. Defendant, Adoise White, was charged with first-degree murder in violation of MCLA 750.316; MSA 28.548, as a result of the killing of the manager of a Kroger supermarket during an armed robbery on March 16, 1963, in the Township of Waterford, Oakland County. Defendant's accomplice, one Charles Hodges, pleaded guilty to second-degree murder and testified against defendant. Defendant was tried by a jury and convicted of first-degree murder in Oakland County Circuit Court on August 13, 1963. Defendant's conviction was reversed by this Court on May 1, 1972. *People v White,* 40 Mich App 433; 198 NW2d 904 (1972). Defendant was tried again by a jury and convicted of first-degree murder on August 29, 1973. Again, defendant appeals.

The victim, Robert Green, was the assistant manager of a Kroger store, and was defendant's employer. The victim's body was discovered in a small room in the store in the early morning hours of March 17, 1963. The victim's hands were tied behind his back. A representative from the Oakland County Medical Examiner's Office testified that Robert Green had been stabbed or slashed at least 42 times and that he had also suffered a number of other wounds. The victim was also shot once at the base of the head. The cause of death was a stab wound on the left side of the chest which entered the victim's heart. An auditor for the Kroger store testified that the store's safe was short $1,733.

At a *Walker* hearing held on January 8, 1973, the trial judge ruled inadmissible as involuntary a confession obtained from defendant on March 19, 1963. During the trial, on August 14, 1973, the

trial judge ruled inadmissible as substantive evidence a filmed interview of defendant by Ven Marshall, a TV-news reporter, which was made on March 19, 1963, while defendant was still unrepresented by counsel. The judge ruled, however, that if defendant chose to take the stand to deny his guilt, he would allow the filmed interview to be used for rebuttal.

Defendant's accomplice, Charles Hodges, had apparently informed the prosecution that he would give testimony in this trial substantially similar to his testimony at the former trial in which he testified against defendant. Shortly before being called as a witness, however, Hodges changed his mind and began to deny the truth of testimony he had given at the previous trial. The prosecution proceeded to call Hodges as a witness, and when Hodges denied that either he or defendant were ever involved in any robbery or murder at the Kroger store, the prosecution was allowed over objection to impeach Hodges' testimony by a filmed television statement he had made and by reading into the record Hodges' testimony in the previous trial.

The prosecution also called Ven Marshall, the television-news reporter, to lay a foundation for the introduction of the filmed statement of Charles Hodges. The prosecutor asked Marshall if he could remember what questions he has asked and what answers he had received. In response thereto Marshall replied, "Quite obviously I can't remember the wording of the questions verbatim, but I did ask Mr. White and Mr. Hodges did they participate in the slaying of Mr. Green, and both told me they had."

Defendant brings several allegations of error, three of which merit our discussion.

The defendant first contends that the trial court committed reversible error mandating reversal by permitting, over defense objection, the impeachment of an accomplice called to testify by the prosecution.

As a general rule a party cannot impeach his own witness. *People v Lee,* 307 Mich 743; 12 NW2d 418 (1943). This rule has roots deep in our common law traditions, but the precise origin thereof is not clear. See McCormick, Evidence (2d ed), § 38, p 75. Exceptions have been made, however, where the prosecution in a criminal case is required to call res gestae witnesses. *People v Elco,* 131 Mich 519; 91 NW 755 (1902), MCLA 767.40a; MSA 28.980(1).

The policy to be served by the rule against impeaching one's own witness is anything but clear. Its defenders contend that the party who calls the witness to testify vouches for his credibility, and that if the calling party is allowed to impeach his own witness he could coerce the desired testimony by the threat of character assassination under the guise of impeachment. The former rationale has little weight, since with the exception of character witnesses and expert witnesses, a litigant has very little choice in the selection of witnesses. He must call those who have some firsthand knowledge of the facts in controversy. We note that five jurisdictions have by statute expressly provided for the impeachment of one's own witnesses by prior inconsistent statements, and eleven jurisdictions allow such impeachment if the witness is proved to be adverse. California has abandoned the rule against impeaching one's own witness in its entirety, as has Kansas.[1] Further, the newly enacted Federal Rules

---

[1] *See* McCormick, Evidence (2d ed), § 38, p 77, n 76.

of Evidence completely abandon the rule.[2] The Advisory Committee's Note accompanying the proposed Rule 607 prior to adoption explains the reasoning behind the change in the rule.

"The traditional rule against impeaching one's own witness is abandoned as based on false premises. A party does not hold out his witnesses as worthy of belief, since he rarely has a free choice in selecting them. Denial of the right leaves the party at the mercy of the witness and the adversary. * * * The substantial inroads into the old rule made over the years by decisions, rules, and statutes are evidence of doubts as to its basic soundness and workability. * * * *"

The peculiar posture of this case is noteworthy. In a former trial, the witness had been allowed to plead guilty to second-degree murder and had testified against defendant. He admitted having told the prosecution prior to this trial that he would testify against the defendant as he had previously. During the trial he changed his mind. If he had refused to testify altogether, he would have been deemed unavailable and his prior recorded testimony would have been admissible as substantive evidence for the prosecution. *People v Pickett,* 339 Mich 294; 63 NW2d 681 (1954). As it was, he took the stand and denied his own guilt and the guilt of defendant. If defendant had called Hodges as his witness, and Hodges had given the same testimony, the prosecution would have been allowed to impeach him with his prior recorded testimony as well as other prior inconsistent statements. If the witness had not informed the prosecution of his intention to testify favorably to the defendant prior to taking the stand, the prosecution would have been able to impeach his credibil-

[2] FR Evid, 607.

ity with prior inconsistent statements based on surprise, a recognized exception to the rule. *People v Walters,* 223 Mich 676; 194 NW 538 (1923), *People v Payne,* 131 Mich 474; 91 NW 739 (1902), *People v Gillespie,* 111 Mich 241; 69 NW 490 (1896). If the prosecution had known in advance that the witness would not testify as he had previously, different preparations might have been made for trial. If we follow the general rule regarding impeachment of one's own witness, therefore, a confessed felon would be allowed to sabotage the people's case by promising to testify favorably to the prosecution prior to trial, and then informing the prosecution after trial was underway that he would instead testify favorably to the defendant.

Where a witness has promised to testify for a party in accord with testimony given at a previous trial, thereby inducing the calling party to rely thereon, and has informed the calling party of a change in intentions after the trial has begun, if the trial judge determines such witness to be adverse at the time he takes the stand, the calling party may introduce the prior recorded testimony and prior inconsistent statements of the witness for impeachment purposes.

Defendant next contends that he was denied his right to take the stand and testify in his defense by the trial court's erroneous ruling that it would admit on rebuttal the 1963 television-news film in which defendant made certain admissions. Defendant contends that the judge had impliedly ruled the admissions, made during the television interview, involuntary and that consequently it was error for the admissions to be admitted in rebuttal. The people argue that the fact that the trial judge ruled the admissions admissible for impeachment purposes meant that he impliedly ruled

them to be voluntarily made, and thus not inadmissible. The trial judge's ruling was as follows:

"Gentlemen, I'm going to follow the law in this case in *Harris v New York,* of the majority opinion, and that opinion of the United States Supreme Court speaks very clearly. They simply said this, that this line of proof may not be admitted in any case in chief, the case which the people have just finished, that they have also said so clearly and unequivocally that such proof of impeachment led this defendant to the stand and denied that he ever made controversial statements that the Court saw *in camera* in Exhibit 21-A, that they could be admitted. If such circumstances develop in this case, I would want you to know that I will admit the evidence in Exhibit 21-A."

The United States Supreme Court case of *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971), held that where a confession is obtained from a defendant in violation of his *Miranda* rights, such confession may not be used in the prosecution's case-in-chief, but it may be used for impeachment purposes if the defendant chooses to take the stand to deny his guilt. We think the trial judge erred in finding *Harris* applicable to the case at bar. In the *Harris* case, the United States Supreme Court recognized the distinction between statements to a law enforcement officer and statements made to a third party.

"Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment." *Harris, supra,* at 225–226; 91 S Ct at 646; 28 L Ed at 5.

The trial judge viewed the film clip a total of three times. Nowhere did he indicate that he found the

statements in any way coerced or involuntary. The prosecution argues that these statements should have been admissible in their case-in-chief. We agree. The news reporter had no duty to give the defendant any *Miranda* warnings. Since the judge's decision in this regard served to help rather than hurt the defendant's case, this was clearly not reversible error.

Defendant further contends that the trial court committed reversible error mandating a new trial in refusing to declare a mistrial when the witness who interviewed defendant on television volunteered that defendant had admitted participation in the murder of Robert Green. This contention has little merit. For reasons stated, *supra,* full testimony of the conversation should have been freely admissible in the people's case since they were made to a third party and not to police officials. If the judge had been correct in ruling such testimony improper, it would still not constitute reversible error because the prosecution did not elicit the testimony purposely and it will be presumed that the judge will apply the proper corrective measures if requested to do so. See *People v Swann,* 44 Mich App 329; 205 NW2d 281 (1973), and cases cited therein.

The judge immediately ordered the unresponsive testimony stricken from the record and the defense did not ask for a curative instruction. The defense chose to cross-examine the witness fully about the statements.

We have examined the other contentions of error and find them to be without merit.

Affirmed.