PEOPLE v WALTON

PEOPLE v SANDERS

1. WITNESSES—CRIMINAL LAW—EXCLUSION OF WITNESSES—JUDGE'S
   DISCRETION.

   The exclusion of witnesses in a criminal trial is discretionary
   with the trial judge, and a judge did not abuse that discretion
   where he excluded the allegedly exculpatory testimony of a
   witness who had ignored a sequestration order, had been pres-
   ent in the courtroom, had heard all the testimony, and who
   came forward only after the cases of both the prosecution and
   the defense had been presented.

2. WITNESSES—CRIMINAL LAW—WITNESS'S LOSS OF MEMORY—JUDGE'S
   DISCRETION—PRELIMINARY EXAMINATION TESTIMONY—STAT-
   UTES.

   A witness's preliminary examination testimony was properly
   ordered to be read into the record at trial for both impeach-
   ment and substantive evidentiary purposes where the witness
   had testified and been thoroughly cross-examined at the prelim-
   inary examination and at trial suffered an unexplained loss of
   memory which the judge concluded was a mere sham (MCLA
   768.26; MSA 28.1049).

3. CRIMINAL LAW—EVIDENCE—WITNESSES—STATEMENT OF WITNESS—
   HARMLESS ERROR.

   The admission, as substantive evidence, of a statement previously
   given to police by a witness who testified at trial that he did
   not remember the events in question and that his statement
   had been given only after he had read statements of two other
   witnesses, was harmless error where the statement was cumu-
   lative and unnecessary to support the conviction of the defend-
   ant.

Appeal from Recorder's Court of Detroit, Donald

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial § 61.
[2] 81 Am Jur 2d, Witnesses §§ 610, 611.
[3] 81 Am Jur 2d, Witnesses §§ 455, 456.

S. Leonard, J. Submitted March 10, 1977, at Detroit. (Docket Nos. 27888, 27927.) Decided April 1, 1977.

David L. Walton and Edward Sanders were each convicted of first-degree murder. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Research, Training and Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*Alvin C. Sallen,* for defendant David L. Walton.

*Charles Campbell,* for defendant Edward Sanders.

Before: M. F. CAVANAGH, P. J., and R. B. BURNS and BEASLEY, JJ.

PER CURIAM. Defendants appeal from their jury conviction of first-degree murder, MCLA 750.316; MSA 28.548.

The evidence at trial showed that on the evening of February 21, 1975, the decedent and several other men were helping decedent's sister move into a flat on Tyler Street in Detroit. An automobile driven by defendant Sanders and occupied by defendant Walton and three other men pulled up in front of the house. The occupants of the vehicle inquired as to the whereabouts of a "party" and some heated words ensued between the decedent and Sanders. Sanders informed the decedent that he had better not be around when they returned, and warned another mover not to be "standing next to him when we come back".

Sanders then drove the vehicle around the corner and into an alley. Sanders and Walton exited the vehicle and removed a sawed-off shotgun from the trunk. They got back in the vehicle and returned to the Tyler flat.

Sanders inquired as to the whereabouts of "big mouth". Decedent responded from the upstairs porch of the flat. Walton was holding the shotgun and asked Sanders if he should shoot him. Sanders answered "yes", and Walton fired at, and killed, decedent. The vehicle drove away.

Testimony as to the above chronology of events was offered by numerous of the movers and all of the occupants of the vehicle, save defendant Sanders. Mover Alvin Reed knew both Walton and Sanders from the streets and positively identified Walton as the gunman. Two other movers stated that the person behind the driver fired the shot, but could not identify this person.

Jacky Hicks, an occupant of the vehicle, testified under grant of immunity that Sanders gave the order and that Walton fired the shot. Angelo Shedrick testified that he had been sitting in the middle of the rear seat. On direct examination he could remember nothing about any shooting episode, but stated on cross-examination that Hicks, and not Walton, had been sitting behind Sanders and had fired the shot. This contradicted his preliminary examination testimony that it was Walton who had fired. Zachary Threatt, the other front-seat passenger, stated that it was Walton who had been sitting behind Sanders but that he, Threatt, had passed out from drink and could remember nothing about the episode. However, in an earlier statement to police he had stated that Sanders gave the order and that Walton had shot decedent. Walton's own testimony was that it was

Hicks who had shot the decedent, and that he, Walton, and Sanders had tried to stop him.

Both defendants assert reversible error in the trial judge's exclusion of the allegedly exculpatory testimony of a "surprise" witness who had disregarded the court's sequestration order.

The sequestration order had issued at the very beginning of trial with the agreement of both counsel. It was read in open court to all of the spectators. The "surprise" witness, Larry Hicks (the brother of Jacky Hicks), had been present in the courtroom, had heard all of the testimony, and came forward only after the respective cases of the prosecution and defense had been presented. According to the defense, Larry Hicks would have testified that his brother had told him "that he [Jacky, a black male] shot a nigger", but didn't know if he was dead.

It is settled that the exclusion of witnesses in a criminal case is discretionary with the trial judge. MCLA 600.1420; MSA 27A.1420. *People v Dickerson,* 62 Mich App 457; 233 NW2d 612 (1975), *People v Insley,* 36 Mich App 593; 194 NW2d 20 (1971). A thorough review of the transcript does not indicate that the judge abused this discretion by reaching a result "palpably and grossly violative of fact and logic * * * ". *Spalding v Spalding,* 355 Mich 382, 384; 94 NW2d 810 (1959). See *People v Sawicki,* 4 Mich App 467; 145 NW2d 236 (1966).

This case involved a particularly violent crime and a large number of res gestae witnesses with obviously competing interests. The credibility of the various witnesses was crucial to any jury verdict, and the trial judge viewed it necessary to insure that the witnesses testified without hearing one another. Larry Hicks heard the sequestration

order, ignored it, listened to his brother's testimony, and waited three days before coming forward.

To his credit, the trial judge expressly declined the prosecutor's invitation to base his decision on the obvious aura of perjury and gang intimidation which pervaded the trial and which very possibly motivated Larry Hicks (the five occupants of the vehicle were all members of the "Linwood Players" street gang). We are convinced that the trial judge responded patiently and judiciously throughout the trial and that he did not abuse his discretion in this particular instance.

Defendant Walton asserts two additional allegations of error involving sudden lapses of memory at trial on the part of two other occupants of the vehicle.

Angelo Shedrick testified at preliminary examination that Walton had fired the fatal shot on Sanders' order, and was thoroughly cross-examined on that point. On direct examination at trial, however, Shedrick suffered an unexplained loss of memory concerning the events of the evening and testified in a recalcitrant, if not contemptuous, manner. The trial judge concluded that Shedrick's inability to remember was a "mere sham" and ordered that his preliminary examination testimony (both direct and cross-examination) be read into the record for both impeachment and substantive evidentiary purposes. This ruling was wholly proper under the statutory provision for "unavailable" witnesses, MCLA 768.26; MSA 28.1049, as elaborated upon by *People v Thomas,* 61 Mich App 717; 233 NW2d 158 (1975), *People v Szeles,* 18 Mich App 575; 171 NW2d 550 (1969), *and People v Pickett,* 339 Mich 294; 63 NW2d 681 (1954).

The other such episode involved the testimony of

Zachary Threatt. Threatt testified at trial that he did not recall anything that happened on the night in question because he had passed out. He admitted, however, that he had given a statement to the police concerning the events in question, identified the statement, but stated that he gave it after reading sworn statements by Shedrick and Hicks such as to imply that he did not give the statement based upon his own memory of events. The trial judge ordered that Threatt's statement should be read into the record as substantive evidence.

Under *People v Couch,* 49 Mich App 69, 73–74; 211 NW2d 250, 253 (1973), the admission as substantive evidence of this prior-recorded, out-of-court statement was, in all probability, erroneous. In this context, however, the error was surely harmless beyond a reasonable doubt. Threatt's statement was purely cumulative and was unnecessary to support the conviction. Both Alvin Reed, a mover, and Jacky Hicks, an occupant of the vehicle, testified as to the identical set of facts involved in the episode. This testimony was supported by Angelo Shedrick's preliminary examination testimony and was partially corroborated and not contradicted by the testimony of two other movers. We find the error to be harmless. *People v Robert Hall,* 56 Mich App 10, 19; 223 NW2d 340, 345 (1974).

Defendant Walton last asserts that prosecutorial remarks about gang membership and coercion constitute a miscarriage of justice and a denial of his right to a fair trial. Defendant does not specifically quote any of these objectionable remarks. Our review of the transcript reveals no such remarks that would constitute a manifest injustice

in light of the overwhelming evidence of guilt. *People v Richard Smith,* 68 Mich App 138; 242 NW2d 42 (1976).

　Affirmed.