PEOPLE v DORTCH

Docket No. 77-721. Submitted October 6, 1977, at Grand Rapids.—
    Decided June 19, 1978. Leave to appeal applied for.

Johnny Dortch was convicted of first-degree murder and conspir-
    acy to commit murder in Berrien Circuit Court, Julian E.
    Hughes, J. The testimony of witness Terry Langford was the
    only evidence against the defendant. At defendant's prelimi-
    nary examination, Langford testified that he agreed with de-
    fendant to kill his illegitimate son for $1,000 and thereafter did
    murder the son and his mother. At trial, he testified that he
    didn't recall any events on the day of the crime. The trial court
    ruled that Langford's preliminary examination testimony could
    be read into evidence. The question on appeal is whether this
    evidence was admissible. *Held:*

    1. The preliminary examination testimony of a witness who
    has changed his testimony and repudiated his prior statement
    is not admissible where the witness is available for trial.

    2. Statements against penal interest are not admissible
    where the declarant is available for trial and the testimony is
    not against his interests.

    Reversed.

    M. J. KELLY, J., dissented. He would hold that controlling
    precedent at the time of the trial provided that prior recorded
    testimony and prior inconsistent statements of an adverse
    witness who had changed his testimony after the trial had
    begun was admissible for impeachment purposes and that
    preliminary examination testimony should be allowed at a
    later trial where the recalcitrant witness is available, in court,
    and can be confronted with his prior testimony.

OPINION OF THE COURT

REFERENCES FOR POINTS IN HEADNOTES
[1–4, 6] 21 Am Jur 2d, Criminal Law §§ 343, 344, 367.
    Mode of proof of testimoney given at former examination, hearing,
    or trial, 11 ALR2d 30.
[5] 20 Am Jur 2d, Courts §§ 82–86.

1. WITNESSES—CRIMINAL LAW—PRIOR TESTIMONY—HEARSAY—ADMIS-
   SIBILITY—FAILURE TO PRODUCE—MENTALLY INCOMPETENT.

   Preliminary examination testimony by statute is inadmissible
   hearsay at a later trial unless a witness cannot be produced or
   is mentally incapable of testifying; precedent cases have ex-
   panded the reading of the statute to include an exception
   where there is refusal to testify, invocation of the Fifth Amend-
   ment by a witness, recalcitrant witnesses, and lack of memory
   (MCL 768.26; MSA 28.1049).

2. WITNESSES—CRIMINAL LAW—PRIOR TESTIMONY—HEARSAY—ADMIS-
   SIBILITY—AVAILABILITY FOR TRIAL.

   The preliminary examination testimony of a witness is not admis-
   sible under the prior testimony exception to the hearsay rule of
   unavailability or mental incompetence where the witness is
   available for trial although he has changed his testimony and
   repudiated his prior statement.

3. WITNESSES—CRIMINAL LAW—STATEMENTS AGAINST INTEREST—
   HEARSAY—ADMISSIBILITY—AVAILABILITY—AVAILABILITY FOR
   TRIAL.

   Statements against penal interest are admissible as an exception
   to the hearsay rule where the declarant is unavailable for trial;
   however, these statements are not admissible and the penal
   interest exception does not apply where the declarant is availa-
   ble for trial and the testimony is not against the interests of
   the witness.

DISSENT BY M. J. KELLY, J.

4. WITNESSES—CRIMINAL LAW—PRIOR TESTIMONY—ADMISSIBILITY—
   ADVERSE WITNESS—IMPEACHMENT.

   *Admitting at a later trial the preliminary examination testimony
   of a witness who has changed his testimony was not error
   where the rule then in effect provided: where a witness has
   promised to testify for a party in accord with testimony given
   at a previous trial, thereby inducing the calling party to rely
   thereon, and has informed the calling party of a change in
   intentions after the trial has begun, if the trial judge deter-
   mines such witness to be adverse at the time he takes the
   stand, the calling party may introduce the prior recorded
   testimony and prior inconsistent statements of the witness for
   impeachment purposes.*

5. Trial—New Rules—Prospective Application.

*The pronouncement of new rules for the trial of cases should be made prospectively to the legal community.*

6. Witnesses—Criminal Law—Prior Testimony—Admissibility—Availability—Availability for Trial.

*The preliminary examination testimony of a witness who has changed his testimony should be allowed at a later trial where the recalcitrant witness is available, in court, and may be confronted with his prior testimony.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John A. Smietanka,* Prosecuting Attorney, and *Charles W. Dunfield,* Assistant Prosecuting Attorney, for the people.

*Keller, Keller, Creager, Kosick & Rochau,* for defendant on appeal.

Before: M. F. Cavanagh, P. J., and Bronson and M. J. Kelly, JJ.

Bronson, J. Defendant was convicted on February 13, 1976, by a jury of first-degree murder, MCL 750.316; MSA 28.548, and conspiracy to commit murder, MCL 750.157a; MSA 28.354(1). He appeals of right raising one issue.

The testimony of Terry Langford was the only evidence against defendant. At defendant's preliminary examination, Langford testified that he was contacted by defendant and offered $1,000 to kill defendant's son in a scheme to collect life insurance proceeds. Langford described how he picked up defendant's illegitimate son and his mother on a pretense of delivering money from Dortch, took them to an isolated area and shot them both twice with a sawed-off shotgun. Langford testified as part of a plea bargain in which he was allowed to plead guilty to second-degree murder, with a recommended sentence of 20–40 years.

At trial, Langford testified that he did not recall any events on the date of the crime. The prosecution moved to introduce Langford's preliminary examination testimony as substantive evidence. The trial court ruled that the motion was premature because defense counsel had not had the opportunity to cross-examine Langford. On cross, Langford denied the killing, the conspiracy and the truth of his prior testimony, but did not testify as to anything else. The trial court then ruled that the preliminary examination testimony could be read into evidence. The importance of Langford's preliminary examination testimony is illustrated by the trial judge's comment in ruling on defendant's motion for directed verdict that, absent Langford's preliminary examination testimony, he would have directed a verdict for defendant.

It is not disputed that the preliminary examination testimony was hearsay.[1] See *Ruhala v Roby,* 379 Mich 102; 150 NW2d 146 (1967). Thus, the question before us is whether the testimony is admissible under some exception to the hearsay rule.

MCL 768.26; MSA 28.1049 provides:

"Testimony taken at an examination, preliminary hearing, or at a former trial of the case, or taken by deposition at the instance of the defendant, may be used by the prosecution whenever the witness giving such testimony can not, for any reason, be produced at the trial, or whenever the witness has, since giving such testimony become insane or otherwise mentally incapacitated to testify."

---

[1] Michigan Proposed Rules of Evidence 801(d)(1) would have changed the law by providing that prior inconsistent testimony of a witness who testifies at trial or hearing and is subject to cross-examination is not hearsay. That proposed rule was, however, not adopted. *See* MRE 801(d).

Although this statute, by its terms, only allows into evidence prior testimony when the witness cannot be "produced", or is "mentally incapable" of testifying, cases interpreting it have given it an expansive reading. See, *e.g.*, *People v Goldman,* 349 Mich 77; 84 NW2d 241 (1957) (refusal to testify), *People v Pickett,* 339 Mich 294; 63 NW2d 681 (1954) (witness invoked Fifth Amendment), *People v Walton,* 76 Mich App 1; 255 NW2d 640 (1977) ("recalcitrant" witness); *People v Thomas,* 61 Mich App 717; 233 NW2d 158 (1975) (lack of memory), *People v Szeles,* 18 Mich App 575; 171 NW2d 550 (1969) (refusal to testify).

However, *People v White,* 401 Mich 482; 257 NW2d 912 (1977), decided after trial in the case at bar, alters our perspective. In *White,* Charles Hodges, a codefendant who pled guilty and testified at the defendant's first trial, was called by the prosecutor at the defendant's second trial. At that trial, Hodges began by stating that he could not remember his earlier testimony. After the prior testimony was read to refresh his memory, Hodges testified that his prior testimony was a lie. The Court held[2] that the prior testimony was not admissible under the prior testimony exception to the hearsay rule; Hodges was not "unavailable", he had simply *changed* his testimony.[3]

---

[2] The prosecutor did not advance this argument, but the Court expressly ruled on it. *See People v White, supra,* at 510.

[3] In *White* and the rejection of proposed rule 801(d)(1)(A), the Supreme Court has reversed the trend toward liberal admissibility of former testimony. McCormick, for example, argues persuasively in favor of wider admission of former testimony:

"The traditional restrictions upon the admission of evidence of former testimony are understandable as the reflections of an earlier era when there were no court reporters, and as logical deductions from the premise that cross-examination is the only substantial safeguard for the reliability of this evidence. But when we view them in comparison with doctrines admitting other types of oral declarations as exceptions to the hearsay rule, such as declarations against interest, declarations of present bodily or mental state, and excited or

A similar scenario evolved in the case at bar.
Langford, on direct examination, indicated a lack
of memory concerning events on the days in ques-
tion.[4] The prosecutor moved to admit Langford's

---

spontaneous utterances, which seem far less reliable, the restrictions
upon declarations in the form of sworn testimony in open court or
official hearing, seem fantastically strict. As Morgan said, 'Were the
same strictness applied to all hearsay, evidence of reported testimony
would constitute the only exception to the hearsay rule.'
   "In the light of this broader view, therefore, it seems that the most
immediate improvement would come from the wider acceptance
among the courts of the attitude that the present scheme of admissi-
bility of former testimony should be applied with a reasonable liberal-
ity favoring in case of doubt the admission of this type of evidence."
(Footnotes omitted.) McCormick on Evidence (2d ed, 1972), § 261.
*See, also,* MRE 801(d)(1)(A) and Commentary.
   Furthermore, it is not clear that Hodges, the witness in *White,* was
"available" even though he repudiated his former testimony. After a
witness has consistently claimed a lack of memory on direct examina-
tion, should a sudden assertion of innocence or the bald statement
that the former testimony was a lie preclude a finding that the
witness is "unavailable" due to a lack of memory? It certainly seems
possible that a witness can assert innocence and still have a lack of
memory concerning the subject matter of his former testimony. In
such a case, the determination of unavailability should be left to the
sound discretion of the trial judge, who is in the best position to view
the demeanor of the witness. See MRE 804(a)(3), defining an unavaila-
ble declarant as one who "has a lack of memory * * * ."
   However, we are again met by the dichotomy posed in *White:* either
the witness lacks memory completely or he has changed his testi-
mony. In *White,* a statement that the prior testimony was a lie was a
sufficient change in testimony to render Hodges "available". Lang-
ford's similar assertion in the case at bar therefore constituted a
"change" in testimony preventing admission of the former testimony.
   [4] "Q. If I understand your testimony then, Mr. Langford, and let me
know if I am wrong, on September 17th and 18th of 1974— [A
physician found the date of the victims' deaths to be September 17 or
18. They were found on September 27.]
   "A.—Now, you can't say from September 20th or whatever, you
have got to give me the exact date, because that's been about a year
or something ago, you know.
   "Q. I know. It's been longer than that.
   "A. Yeah.
   "Q. Let me ask you, September 17, 1974, being a Tuesday, where
were you living at that time?
   "A. Now, you asked me a question that I can't recall, because of the
fact that it's been so long ago.
   "Q. Do you recall your activities for that day?
   "A. No, I don't.

prior testimony as substantive evidence, but the trial judge deferred ruling on the motion until after cross-examination of Langford. On cross, the only testimony evoked was Langford's assertion that the prior testimony was not the truth and his denial that he committed the killings or conspired to commit them. The trial judge then ruled the prior testimony admissible.

The rationale of *White* mandates reversal in the case at bar. Had Langford's testimony consisted solely of a professed loss of memory, his prior testimony would have been admissible. See *People v Thomas, supra;* MRE 804(b)(1). However, here, as in *White,* the witness eventually changed his testimony and repudiated his prior statement. We are compelled by *White* to hold that Langford was not "unavailable" for purposes of the former testimony exception to the hearsay rule.

We also hold that Langford's testimony was not an admissible statement against interest. See *Peo-*

"Q. On September the 18th, the next day, Wednesday, 1974, can you remember on that day where you lived?

"A. No.

"Q. Can you remember where you were?

"A. No.

"Q. And one more day, September 19th, being a Thursday, can you recall where you lived?

"A. No.

"Q. Now, I asked you earlier as to another date, which was September 27, 1974, being a Friday, do you recall where you lived at that time?

"A. Do I recall where I lived at?

"Q. Yes, September 27, 1974, Friday?

"A. Yes, the Milner Hotel.

"Q. And do you recall where you were living, your whereabouts?

"A. At the Milner Hotel.

"Q. Milner?

"A. Yes.

"Q. And do you recall where you were on the evening of that particular day, Friday?

"A. No, I don't recall. All I know I was at the Milner Hotel where I was staying, but as far as my activities were concerned, I couldn't tell you.

"Q. Okay, thank you."

*ple v Ernest Edwards,* 396 Mich 551; 242 NW2d 739 (1976).

In *Edwards,* the Court held that statements against penal interest are admissible as an exception to the hearsay rule where the declarant is unavailable for trial.[5] The Court's rationale was that such evidence is inherently reliable and should be admitted when necessary. In the case at bar, Langford's former testimony was given as part of a bargain in which he was allowed to plead guilty to second-degree murder and granted immunity from prosecution. As a result of the favorable bargain, Langford's testimony was not *against* his interests; it was in his interest to testify as he did. Because the statement was not so far against Langford's interest that a reasonable person would not make it unless it were true,[6] it lacked the requisite indicia of reliability upon which the exception is based. Therefore, the testimony was not admissible under the *Edwards* exception.

Additionally, the statement against penal interest exception requires the declarant to be unavailable for trial. *People v Edwards, supra;* MRE 804(b)(3). As we held above, because Langford changed his testimony at trial, he was "available".[7] The penal interest exception therefore does not apply. Langford's prior testimony was inadmissible hearsay. Defendant's conviction must therefore be reversed.

---

[5] *Cf.* MRE 804(b)(3), requiring corroboration of exculpatory statements against the declarant's penal interest.

[6] *See* MRE 804(b)(3).

[7] It is not clear whether "unavailability" is differently defined for different hearsay exceptions. *See* McCormick on Evidence (2d ed, 1972), § 253. Absent any Michigan authority defining "unavailability" in the context of the penal interest exception, we hold that the definition developed for admission of former testimony applies to the statement against interest exception as well. *See* MRE 804, which defines "unavailability" without differentiating it for various hearsay exceptions.

M. F. Cavanagh, P. J., concurred.

M. J. Kelly, J. *(dissenting).*

### Recent History

In *People v White,* 401 Mich 482; 257 NW2d 912 (1977), on which the majority relies, the self-confessed murderer, twice convicted, twice reversed, sought the shelter of the exclusionary rule, pre-*Miranda,* regarding involuntary confessions. Three separate recorded confessions plus one broadcast on network TV were suppressed. The officer's testimony that he found the loot after "conversations with" defendant and his accomplice was likewise suppressed. This in spite of the high court's opinion that an incriminating statement made by the defendant to a newsman and broadcast on television for the world to see "would in most cases, weigh heavily in favor of a conclusion of voluntariness".

The defense produced witnesses that defendant and the victim were friends. In rebuttal the people produced contrary hearsay evidence. In construing the ·people's rebuttal as error the defense was unchallenged for bringing immaterial, collateral, conclusionary evidence inviting the error.

It seems anomalous that harmless error was not invoked or discussed. Does it signify a consensus which repudiates the harmless error rule? GCR 1963, 529.1.

Johnny Dortch was convicted on the preliminary examination testimony of Terry Langford, the killer-for-hire. Adoise White was convicted on the prior trial testimony of his accomplice Charles Hodges. In each case the accomplice had second thoughts after a plea bargain and repudiated his former testimony. The applicable law until White's third and last reported opinion governed Dortch's

trial. That was *People v White,* 65 Mich App 56; 236 NW2d 583 (1975) (hereinafter *White #2),* released four months before Dortch was tried. The trial court was bound by the rule that:

> "Where a witness has promised to testify for a party in accord with testimony given at a previous trial, thereby inducing the calling party to rely thereon, and has informed the calling party of a change in intentions after the trial has begun, if the trial judge determines such witness to be adverse at the time he takes the stand, the calling party may introduce the prior recorded testimony and prior inconsistent statements of the witness for impeachment purposes." 65 Mich App at 62.

What was at hand in the *White* case and what is at hand in this case was in-court sworn testimony, where the defendant was confronted by the witness and represented by an attorney who was allowed and undertook cross-examination. The proofs appear to show beyond all doubt that Adoise White and Charles Hodges tied Robert Green's hands behind his back, stabbed and slashed him 42 times, and shot him at the base of the head as a result of which he expired. The proofs here show beyond reasonable doubt from this record that Johnny Dortch hired Terry Langford to kill and murder seven-year-old Johnny Freeman by shotgun or otherwise for insurance proceeds, and that Langford did so, throwing in the execution of Brenda Freeman to eliminate a witness.

The present Michigan rule of evidence, MRE 801, Hearsay; Definitions, says:

> "(d) Statements which are not hearsay. A statement is not hearsay if—
> "(1) Prior statement of witness. The declarant testified at the trial or hearing and is subject to cross-examination concerning the statement, and the state-

ment is one of identification of a person made after perceiving him * * * ."

The rules of evidence were taken verbatim from the Federal Rules of Evidence when proposed. The Federal rule follows:

"(d) Statements which are not hearsay. A statement is not hearsay if—

"(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving him * * * ."

Somewhere along the line the committee or the Supreme Court eliminated clauses (A) and (B). So far as one can determine *White #2, supra,* was not considered or discussed, or if considered and discussed was not mentioned. Did the committee foresee the reversal of 65 Mich App 56 by the Supreme Court or did the Supreme Court become convinced by its consideration of *White #2, supra,* that the Federal rule was *too* broad? It would appear that Justice Ryan's restrictive view was adopted. What is admissible under the Federal rule is prohibited under that too narrow view. The result favors the recalcitrant witness.

In this case Terry Langford took the witness stand and operated his forgettery. He didn't recall anything. The trial court allowed defense counsel to cross-examine him and defense counsel elicited the testimony that Langford did not kill the Freemans, there was no conspiracy, and his prior testimony was incorrect, was wrong, was a lie. The trial judge allowed the preliminary examination

testimony under MCL 768.26; MSA 28.1049. To do otherwise would have condoned perjury and sanctioned a miscarriage of justice.

The trial judge made a reasonable and legally applicable decision in the instant case. There was *no* error, harmless, or otherwise. The rule of the Court of Appeals in *White #2, supra,* was followed. It would be ludicrous to argue that the Supreme Court *White, supra,* did not change the law. Neither could retroactivity be supported. The Federal rule would have to be unconstitutional to support that logic. The pronouncement of new rules for the trial of cases should be made prospectively to the legal community, otherwise a trial takes on the aspects of a shell game.

## PAST HISTORY

In *People v Pickett,* 339 Mich 294; 63 NW2d 681; 45 ALR2d 1341 (1954), the learned Justice GEORGE E. BUSHNELL writing for a unanimous Court discussed the question of the admission of prior testimony of a state witness, vis-a-vis the right of confrontation and due process of the Sixth and Fourteenth Amendments to the United States Constitution and the comparable provisions in the Michigan Constitution (1908), then cited the statute which is the focal point of this controversy. The statute is the same word-for-word as it was then. MCL 768.26 (formerly 1948 CL 768.26); MSA 28.1049:

"Testimony taken at an examination, preliminary hearing, or at a former trial of the case, or taken by deposition at the instance of the defendant, may be used by the prosecution whenever the witness giving such testimony can not, for any reason, be produced at the trial, or whenever the witness has, since giving such testimony become insane or otherwise mentally incapacitated to testify."

The witness Arney had testified a number of times before the grand jury and he had given testimony at the preliminary examination under a grant of immunity. At the *Pickett* trial however he advised the court that he was going to refuse to testify on his Fifth Amendment rights and questioned the validity of the prior grant of immunity. This on advice of counsel. Procedurally the method used was capsulized by Justice BUSHNELL:

"Arney's counsel stated that in the event the court should overrule his or his client's objection, that he had advised Arney to refuse to testify and take the position that he would test the validity of the court's ruling on the contempt proceeding which might follow. The jury was then recalled, Arney was sworn and questioned to the point of refusal. The jury was excused and the court ruled that the immunity order adequately protected the witness and ordered him to proceed to answer. Arney and his attorney refused to respect the ruling. The ensuing colloquy was concluded by the court with the statement: 'Well, is there anything either side thinks should be done further in the presence of the jury now?' The record shows that to this question there was no response.

"The people then stated that they would offer in evidence the transcript of Arney's testimony at the examination. The defendants objected, raising the question of the right of confrontation, and stated that the witness was available. The court overruled this objection, recalled the jury and explained to it that upon Arney's refusal to testify, his testimony given at the examination in the cause had thereby become admissible." 339 Mich at 304.

Thereafter the preliminary examination testimony was read to the jury by the prosecutor. Justice BUSHNELL couched the question in terms of a recalcitrant witness who had taken the Fifth Amendment after having previously been granted

immunity. Obviously this is not the precise question before us because we do not have the immunity grant situation. However if availability is the key to the door of prior testimony then we have the following from Justice BUSHNELL:

"Availability in the sense used by Gillespie must be broadly construed in the context in which it is found. This word does not mean physical presence alone, but is definitive of 'having sufficient force or efficacy for the object,' which object in this instance is the attainment of justice through the admission of the witness's former testimony.

"The statute which permits the use of former testimony authorizes that use by the prosecution, 'whenever the witness giving such testimony cannot, for any reason, be produced at the trial.'

Under the facts recited, Arney, by invoking the privilege against self-incrimination, although having been granted immunity, made himself as 'unavailable' as if he were deceased or absent from the jurisdiction.

"Defendants, of course, had the constitutional right to be confronted by the witness. This right was accorded them at the preliminary examination when they had ample opportunity to cross-examine Arney who was there a witness confronting them. They may not be heard now to complain on this ground. *People v. Schepps,* 217 Mich 406 [186 NW 508] (21 ALR 658) [1922], *In re Rudnik,* 338 Mich 577 [61 NW2d 597 (1953)], *People v. Myers, supra,* [239 Mich 105; 214 NW 130 (1927)], *People v. Moore, supra,* [306 Mich 29; 10 NW2d 296 (1943), *cert den,* 321 US 787; 64 S Ct 783; 88 L Ed 1078 (1944)], *People v. Hunley, supra,* [313 Mich 688; 21 NW2d 923 (1946)], and *People v. Johnston, supra,* [328 Mich 213; 43 NW2d 334; 20 ALR2d 1001 (1950)].

"This Court has never departed from the rule that the constitutional rights of an accused are not abridged where the accused at any stage of the proceedings, upon the same accusation, has been once confronted by the witness against him, with an opportunity to cross-exam-

ine that witness. 1 Gillespie, Michigan Criminal Law & Procedure (1st ed), § 474, p 581." 339 Mich at 306.

Note that the immunity question slides out of focus. Why should it not? How is the immunity of the witness important to the constitutional rights of the defendant? The opinion of the Supreme Court in *People v White,* 401 Mich 482, 510; 257 NW2d 912 (1977), cursorily mentions *People v Pickett, supra,* declaring in the text that *Pickett* is inapplicable because the *(White)* witness was physically available at trial and had changed his testimony. The accompanying footnote 8 at the following page, 511, provides:

"On the other hand, if, upon a new trial, Hodges is for some reason unavailable, his testimony at the first trial would be admissible under current law as former testimony. *People v Pickett,* 339 Mich 294; 63 NW2d 681 (1954). If the witness is present but testifies to a lack of memory, claims a privilege, or refuses despite an order of the court to testify, he may nevertheless be deemed unavailable and the former testimony rule will apply just as if he could not be present. Proposed Michigan Rules of Evidence 804(a), 804(b)(1)."

Witness Langford did precisely that. He testified "to a lack of memory" on direct examination. It was only after his preliminary examination testimony was read to the jury that his memory improved and he denied the crime.

It would appear that any rule emerging from the Supreme Court *White* opinion is somewhat elusive. If the witness were to testify on retrial to exculpate White he can be impeached. If he refuses or forgets he is unavailable and the prior testimony can be introduced. In the opinion which declares the error the future use is condoned.

In the recent opinion of *People v Castaneda,* 81

Mich App 453; 265 NW2d 367 (1978), the panel joined in allowing preliminary examination testimony under circumstances markedly similar to *White, Dortch* and *Pickett.* One Velasquez incriminated Castaneda at the preliminary examination then later, on motion to withdraw his plea, Velasquez repudiated his testimony. The Court held that,

"MCLA 768.26; MSA 28.1049 clearly permits testimony of a witness at a preliminary examination to be read at the trial.

\*    \*    \*

"The trial judge properly ruled that in asserting his Fifth Amendment privilege, Velasquez had made himself 'unavailable' to testify at trial." 81 Mich App at 458.

*People v Pickett, supra,* was cited in support. Velasquez took the stand and asserted the Fifth Amendment on most questions but he answered some very critical questions, two of which totally exculpated the defendant. He was asked:

"*Q.* Do you really want to take the Fifth Amendment, now, Freddy, or do you want to clear Lupe's name?
"*A.* I would like to clear his name.
"*Q.* Will you tell me sir, did he have anything to do with that dope transaction?
"*A.* No sir."

Although the words substantive evidence are not used, it appears the use was not limited to impeachment. Perhaps the reader will be able to equate *Castaneda* with page 510 of the Supreme Court *White, supra,* and footnote 9. The writer cannot.

It seems to me that whether one calls the evi-

dence substantive or impeaching, if the recalcitrant witness is available physically, in court, and is confronted with his prior testimony as in *White,* as in *Dortch,* as in *Castaneda,* the jury has the greater benefit of observing the witness than if he were truly physically unavailable.

I would affirm.